517 A.2d 328

John **GOLT**

v.

**Richard PHILLIPS, Wayne Phillips, Phillips Brothers & Associates, and Wayne Phillips Associates.**

**No. 86, Sept. Term, 1985.**

Court of Appeals of Maryland.

Nov. 13, 1986.

2

4

Barbara A. Samuels (Mary W. Coffay, Legal Aid Bureau, Inc., on brief), Baltimore, for appellant.

Fraeda B. Jacobson (Theodore A. Cavacos, on brief), Baltimore, for appellee.

Argued before SMITH,* ELDRIDGE, COLE, RODOW-SKY, COUCH, McAULIFFE and CHARLES E. ORTH, Jr., (retired, Specially Assigned) JJ.

COLE, Judge.

Certiorari was granted in this case to resolve three issues: (1) whether the leasing of an unlicensed dwelling unit constitutes an unfair or deceptive act under Maryland's Consumer Protection Act (CPA); (2) whether the trial judge abused his discretion in allowing a landlord's incurred liability to constitute actual damages that could be withheld

---

* SMITH, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

from a tenant's security deposit; and (3) whether the trial judge abused his discretion in not awarding treble damages and attorney's fees to the tenant when no finding of a reasonable basis for withholding the tenant's security deposit was made.

We shall summarize the facts necessary to place these issues in proper focus. In August 1983, Appellant, John Golt, an elderly, disabled retiree, with the aid of his daughter-in-law, responded to an advertisement placed in the East Baltimore Guide by Phillips Brothers and Associates (Phillips Brothers), a partnership owned by Appellees. The advertisement offered to rent a furnished apartment for $135.00 per month plus utilities. The gas and electric bill for the entire building was to be paid by the tenant on the second floor of the building, and the tenant living in the advertised apartment was to reimburse the second floor tenant for ¼ of the monthly bill. In addition, ¼ of the water and sewer service bill was to be paid as additional rent.

Upon inspection of the apartment, Golt and his daughter-in-law discovered that it was in need of cleaning and repairing. After receiving assurances that the necessary work would be done, Golt and his daughter-in-law signed a month-to-month lease, paid the rent for August, and also paid a $200.00 security deposit. When Golt moved into the apartment, he learned that the toilet facilities were located outside of his apartment and that he would have to share them with another tenant. Some of the repairs he requested before he took possession, and others requested after taking possession, were not completed. After repeating his requests and getting no response, Golt called the Baltimore City Department of Housing and Community Development, which in response to Golt's complaint, inspected the premises on October 19, 1983. The housing inspector discovered that Phillips Brothers did not have the necessary license or inspection to operate the building as a multiple dwelling. Additional Baltimore City housing code violations, including the lack of toilet facilities in Golt's apartment, defective

door locks, and the lack of fire exits and fire doors, were found by the inspector. The Department issued violation notices ordering Phillips Brothers to correct the enumerated violations and to either obtain a proper license or discontinue the use of the building as a multiple family dwelling. The housing inspector stated that simply removing one tenant would not abate the multiple family dwelling violation; the cooking unit in one of the three apartments would have to be removed.

Phillips Brothers sent an eviction notice to Golt on October 24, 1983. The notice informed Golt that his apartment was not properly licensed and was being illegally rented. Golt was therefore ordered to vacate the premises by January 1, 1984. No other tenant was ordered to vacate.

Golt moved to another apartment in early November and returned his keys to Phillips Brothers approximately ten days after moving. The new apartment was rented for three months at a cost of $234.00 per month. When Golt requested the return of his $200.00 security deposit, Phillips Brothers informed him that it was withholding $173.00: $135.00 for November 1983 rent, $22.50 for estimated water and sewer charges, and $15.60 for the October gas and electric charges. The second floor tenant paid the gas and electric bill for October, but did not receive reimbursement from either Golt or Phillips Brothers. Golt rejected Phillips Brothers tender of the balance of his deposit, and brought suit in District Court. Appellees counterclaimed for additional rent and other monies allegedly due.

The District Court held that Phillips Brothers had improperly withheld $135.00 for rent for November 1983, because the dwelling unit was unlicensed and therefore illegal to rent. The court further found that Golt had been overcharged $1.50 for water and sewer use. The District Court denied any relief under the CPA, however, because Golt inspected the dwelling unit before entering the lease agreement and thus "knew what the premises looked like." No findings were made as to whether the eviction was retali-

atory or whether the amounts withheld from the security deposit by Appellees were done reasonably.

Golt appealed to the Circuit Court for Baltimore City, and, following argument, that court dismissed the appeal.[1] We then granted Golt's petition for a writ of certiorari.

Appellant argues that advertising and renting an unlicensed apartment is a violation of the CPA.[2] Appellant further argues that because contracts made by unlicensed businesses are void, he has a right to restitution for rent paid under the void and illegal lease, as well as a right to recover consequential damages incurred in being forced to vacate. In addition, Appellant argues that the trial judge abused his discretion by allowing Appellees to retain part of the security deposit despite the showing that Appellees had not actually paid any expenses. Finally, Appellant contends that, in light of Appellees' wrongful withholding of a portion of the security deposit, the trial judge abused his discretion in denying treble damages and attorney's fees.

Appellees respond to Appellant's first argument by claiming that Appellant's inspection of the apartment before renting insulates Appellees from liability under the CPA. Appellees also contend that Phillips Brothers is liable to a third party for Golt's pro rata share of the October gas and electric bill and water and sewer charges, and thus actual damages were suffered. Lastly, Appellees argue that no

---

1. The circuit court's dismissal was technically improper. Maryland Rule 1335 permits dismissals by an appellate court for only five enumerated reasons: (1) the appeal is not allowed by law; (2) the appeal has not been properly taken pursuant to Rule 1311; (3) the appeal has not been timely filed; (4) the record has not been transmitted in the prescribed time; or (5) the case has become moot. This case clearly does not fall within any of the enumerated reasons. Presumably, the circuit court intended to affirm the District Court's decision, and we shall treat the dismissal as such.

2. Appellant also contends that Appellees' eviction was retaliatory and that a retaliatory eviction is a violation of the CPA. As we find the advertisement and rental of an unlicensed apartment to be a violation of the CPA, we have not considered whether a retaliatory eviction is a violation as well.

bad faith in withholding a portion of the security deposit was shown and the award of treble damages and attorney's fees is merely discretionary.

## I

We will begin our analysis by examining the CPA. In 1973, the Maryland General Assembly enacted the CPA and stated that "consumer protection is one of the major issues which confront all levels of government, and that there has been mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and extension of credit." Maryland Code (1983 Repl.Vol.), § 13–102(a) of the Commercial Law Article. The legislature found the then existing consumer protection laws inadequate, *id.* § 13–102(a)(2), and thus enacted the CPA to "set certain minimum statewide standards for the protection of consumers across the State." *Id.* § 13–102(b)(1). The legislature concluded that "it should take strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent those practices from occurring in Maryland." *Id.* § 13–102(b)(3).

The CPA specifically prohibits any person from engaging in unfair and deceptive procedures in the rental or offer for rental of consumer realty. *Id.* § 13–303(1) and (2). The mandates of this law therefore squarely apply to the rental agreement between Golt and Phillips Brothers. It is with this backdrop in place that we examine Appellant's allegations of CPA violations.

The CPA provides a nonexclusive list of unfair and deceptive trade practices. Section 13–301, in pertinent part, states:

Unfair or deceptive trade practices include any:

(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

(2) Representation that: (i) Consumer ... realty ... have a sponsorship, approval, accessory, characteristic ... which they do not have;

\*       \*       \*       \*       \*       \*

(3) Failure to state a material fact if the failure deceives or tends to deceive.

In our view, advertising and renting an unlicensed dwelling violates § 13–301(1), (2), and (3).

■ Implicit in any advertisement and rental of an apartment is the representation that the leasing of the apartment is lawful. Baltimore City Code, Art. 13, § 1101 (1983 Repl. Vol.), expressly prohibits the operation of any multiple family dwelling without a license or temporary certificate. As Phillips Brothers had neither a license nor a temporary certificate, it violated the City Code. Phillips Brothers could not provide Golt with the unimpeded right to possession during the lease term. Consequently, Phillips Brothers advertisement and rental of the apartment was a "misleading ... statement ... or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." Maryland Code (1983 Repl.Vol.), § 13–301(1) of the Commercial Law Article.

■ Furthermore, such a representation is in essence a representation that the "realty ... [has] a sponsorship, approval ... [or] characteristic ... which [it does] not have," *id.* § 13–301(2)—namely, licensing for operation as a multiple family dwelling. It makes no difference that Appellees did not expressly state that the premises were properly licensed; such a basic prerequisite to any lease agreement is implied. For consumer protection purposes, the meaning of any statement or representation is determined not only by what is explicitly stated, but also by what is reasonably implied. *Spiegel, Inc. v. Federal Trade Commission,* 411 F.2d 481, 483 (7th Cir.1969); *Aronberg v. Federal Trade Commission,* 132 F.2d 165, 167 (7th Cir.

1942); *In the Matter of Seekonk Freezer Meats, Inc.*, 82 F.T.C. 1025, 1054 (1973).[3]

■ Finally, Phillips Brothers also violated § 13–301(3) of the CPA, which states that the failure to disclose a material fact, which deceives or tends to deceive, is an unfair or deceptive trade practice. The lack of proper licensing is a material fact that Phillips Brothers failed to state. In addition, failure to disclose this fact deceived Golt or at least had the tendency to deceive consumers. An omission is considered material if a significant number of unsophisticated consumers would attach importance to the information in determining a choice of action. *See, e.g., Charles of the Ritz Distributors Corp. v. Federal Trade Commission,* 143 F.2d 676, 679–80 (2d Cir.1944); *Gulf Oil Corp. v. Federal Trade Commission,* 150 F.2d 106, 109 (5th Cir. 1945); *cf.* Restatement (Second) of Torts, § 538 (1977) (Under common law fraud, a fact is deemed material if a reasonable person would attach importance to its existence in determining his choice of action.). In our view, the lack of proper licensing for an apartment under most circumstances is a material fact that any tenant would find important in his determination of whether to sign a lease agreement and move into the premises.

■ Phillips Brothers asserts in defense that it was unaware that its building was unlicensed for multiple family use. Ignorance of the law, however, is no defense. A landlord must be held to be aware of all laws concerning the validity of leasing its premises. Furthermore, none of the applicable CPA sections requires the landlord to have knowledge of the falsity or intent to deceive. Section 13–301(1) requires only a "[f]alse, falsely disparaging or misleading statement"; § 13–301(2) requires only a "repre-

---

**3.** The CPA states that in construing the term "unfair or deceptive trade practices," due consideration and weight should be given to the interpretations of the Federal Trade Commission Act by the Federal Trade Commission and the federal courts. Maryland Code (1983 Repl.Vol.), § 13–105 of the Commercial Law Article.

sentation"; and § 13–301(3) prohibits a "failure to state a material fact." *Cf.* § 13–301(9) (which requires "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment ... with the intent that a consumer rely on the same ..."). In other words, § 13–301(1), (2), and (3) does not require scienter on the part of the landlord; the subsections require only a false or deceptive statement that has the capacity to mislead the consumer tenant.

■ Appellees also contend that because Appellant viewed the apartment before agreeing to lease the premises, Appellees made no misrepresentation in violation of the CPA. This defense, however, is ineffective. Simply viewing an apartment cannot inform a prospective tenant that the premises are unlicensed. Therefore, at the time Golt signed the lease, he cannot be said to have had knowledge that the premises was not licensed.

Under similar facts and law, the Connecticut Supreme Court recently held that a landlord violated the Connecticut Unfair Trade Practices Act (CUTPA), Conn.Gen.Stat. §§ 42–110a to 42–110q (1981), by renting apartments and collecting rents therefor without first obtaining the proper licensing. *Conaway v. Prestia,* 191 Conn. 484, 464 A.2d 847 (1983). The CUTPA, like the Maryland CPA, prohibits "unfair or deceptive·acts or practices in the conduct of any trade or commerce." Conn.Gen.Stat. § 42–110b(a) (1981). The Connecticut Supreme Court found that the landlord's collection of rent for unlicensed apartments "unquestionably offended the public policy ... of insuring minimum standards of housing safety and habitability," and was a violation of the CUTPA. *Conaway v. Prestia, supra,* 191 Conn. at 493, 464 A.2d at 852.

It is fully apparent, then, that Phillips Brothers's actions in renting the unlicensed dwelling constitutes an unfair and deceptive trade practice under the CPA. The next question is to determine the amount of damages that may be received under the CPA. Appellant argues that he should recover (1) restitutionary damages—the rent paid for Au-

gust, September, and October, and (2) consequential damages—the cost of moving and the difference between the rental cost of the apartment and the higher rental cost of substitute housing maintained for three months. Appellees urge the court to deny Appellant any relief. We agree with Appellant and explain.

Section 13–408 of the CPA sets forth the private remedy created by the act: "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title." This private remedy is purely compensatory; it contains no punitive component. Indeed, any punitive assessment under the CPA is accomplished by an imposition of a civil penalty recoverable by the State under § 13–410, as well as by criminal penalties imposed under § 13–411. Thus, in determining the damages due the consumer, we must look only to his actual loss or injury caused by the unfair or deceptive trade practices.

It is well settled in this State that if a statute requires a license for conducting a trade or business, and the statute is regulatory in the sense that it is for the protection of the public, an unlicensed person will not be able to enforce a contract within the provisions of that regulatory statute. *See, e.g., S.A.S. Personnel Consultants, Inc. v. Pat-Pan, Inc.,* 286 Md. 335, 341, 407 A.2d 1139, 1143 (1979); *Harry Berenter, Inc. v. Berman,* 258 Md. 290, 293, 265 A.2d 759, 761 (1970); *Smirlock v. Potomac Development Corp.,* 235 Md. 195, 203, 200 A.2d 922, 926–27 (1964); *Snodgrass v. Immler,* 232 Md. 416, 421–22, 194 A.2d 103, 105–06 (1963); *Goldsmith v. Manufacturers' Liability Insurance Co. of New Jersey,* 132 Md. 283, 286, 103 A. 627, 640 (1918). Moreover, it is also well established that the unlicensed person will not be able to recover under quantum meruit, regardless of any unjust enrichment to the other party; to permit a recovery under quantum meruit would defeat the efficacy of the regulatory statute. *Harry Berenter, Inc. v. Berman, supra,* 258 Md. at 296, 265 A.2d at 763; *Thorpe v. Carte,* 252 Md. 523, 529, 250 A.2d 618, 621–22 (1969); Restatement (Second) of Contracts, § 598 (1932).

■ The Baltimore City Code, Art. 13, § 1101 (1983 Repl. Vol.), states: "No person shall conduct or operate ... any ... multiple family dwelling ... without having first obtained a license or a temporary certificate to do so." It is undisputed that Appellees operated the building as a multiple family dwelling without procuring a license. As such, if the license is designed to protect the public, appellees are prohibited from benefiting from the illegal lease of the apartment.

We find that the Baltimore City licensing requirement for multiple family dwellings is a model example of a public health and safety regulation. Upon application to the Department of Housing and Community Development, a temporary certificate is issued pending an inspection of the building. *Id.* § 1102(b). Specially trained members of the Department of Housing and Community Development inspect the building to determine whether it complies with the housing code. *Id.* § 1102(c). When an inspection reveals that any part of the building is imminently hazardous to the health, safety or welfare of the people, an immediate report is made to the Commissioner of Housing and Community Development, Commission of Health, or Chief or the Fire Department. *Id.* § 1102(f). Thus, it is apparent that the licensing requirement is an integral part of the City's effort to maintain safe residential conditions for its citizens. Dwellings that are not licensed escape the inspector's scrutiny and thus provide no opportunity for the City to ensure minimum living conditions. Furthermore, an annual license fee for a multiple dwelling unit is only $20.00 per dwelling unit, with a maximum fee of $10,000.00. *Id.* § 1103(b) (1985 Cum.Supp.). It is evident that the license fee is charged to support the cost of inspections, and not to raise revenue. Therefore, Phillips Brothers may not retain any benefits from the unlicensed lease, and Golt may recover his full damages.

■ Golt's actual loss is comprised of restitutionary and consequential damages. He is entitled to restitution for the

three months of rent paid for the unlicensed apartment, $405.00. He is also entitled to recover consequential damages, such as the cost of moving from the premises to substitute housing, and the difference in cost between reasonable substitute housing and the rental charged for the remainder of the legal term of his lease with Phillips Brothers. After vacating the premises, Golt incurred three months of substitute housing. Golt's lease with Phillips Brothers was a month-to-month lease with a sixty day notice to vacate requirement. As such, Golt is entitled to the difference in the cost of sixty days rent in his substitute housing and sixty days rent at Appellees' apartment. This amount is limited, however, to the extent that the substitute housing was reasonable and of similar quality to the vacated premises.

■ Appellant contends that he is also entitled to recover damages for his third month of substitute housing because Phillips Brothers's notice to vacate was a retaliatory eviction, and thus an illegal eviction. The Code of Public Local Laws of Baltimore City, Art. 4, § 9–10(1) (1980), prohibits a landlord from evicting a tenant "solely because the tenant complained, in good faith, to the landlord or any public agency concerning the tenant's rights or specific housing deficiencies." If the eviction was retaliatory, Golt had a legal right to remain in the apartment past the sixty days provided for in the lease and is entitled to recover the difference in cost between the substitute housing and the vacated premises for an additional month. If the eviction was not retaliatory, Golt is limited to recovery under the sixty day notice requirement in the lease. Whether the eviction was retaliatory is a question of fact. The trial judge, however, made no finding on that issue, and we must therefore remand the case on that issue.

II

■ In August 1983, Golt's first month of tenancy in Appellees' apartment, he paid his gas and electric bill direct-

ly to the gas and electric company. According to the lease, Golt was to pay ¼ of the entire building's gas and electric bill to the second floor tenant, who would then pay the gas and electric company. In September, Golt did pay ¼ of the total gas and electric bill to the second floor tenant. Golt's ¼ share of the October bill was $15.60, but he made no payment for that month. Golt vacated the apartment in November 1983.

Golt also received utility services from the City of Baltimore while he was living in the apartment. The City provided water and sewer service, and the bill was sent to Phillips Brothers. Golt made no payment for this service during his tenancy and the trial judge determined Golt's pro rata share to be $21.00

Phillips Brothers withheld both amounts from Golt's security deposit to be used to reimburse the second floor tenant for payment of the gas and electric bill and to be retained as reimbursement for paying the water and sewer bill. Phillips Brothers admits liability to the second floor tenant for $15.60, but has held Golt's entire security deposit in escrow awaiting the outcome of this case. As such, Phillips Brothers has not yet made any payment.

Appellant contends that Appellees have not been "actually damaged" as required by Maryland Code (1981 Repl. Vol.), § 8–203(g)(ii) of the Real Property Article. That section states that a security deposit is not liquidated damages and a landlord may only retain that amount to which he is "actually damaged." Appellees assert that they have suffered damage in that they have incurred legal liability. We agree with Appellees.

Appellant's view of "actual damages" is overly restrictive. Actual out-of-pocket expenses are not the only type of actual damages. Legal liability is also an actual damage. As such, Phillips Brothers is entitled to retain $15.60 representing the amount owed to the second floor tenant for the ¼ share of Golt's October gas and electric bill and $21.00 representing the amount owed to the City of Balti-

more for the ¼ share of Golt's water and sewer use while living in the apartment.

### III

Maryland Code (1981 Repl.Vol.), § 8–203(f)(1) of the Real Property Article, requires a landlord to return a tenant's security deposit when the tenancy terminates. The section further provides that "[i]f the landlord, without a reasonable basis, fails to return any part of the security deposit, plus accrued interest within 45 days after the termination of the tenancy, the tenant has an action of up to threefold of the withheld amount, plus reasonable attorney's fees. *Id.* § 8–203(f)(4).

Appellant claims that Appellees had no reasonable basis to withhold any amount from the security deposit. Phillips Brothers had sent a letter to its employee who was handling the eviction of Golt. The letter refers to Golt and in pertinent part states: "His daughter brought all this on with her complaining to to [sic] the authorities, and I expect to be compensated for [sic], with rent for November and December." Golt therefore contends that Phillips Brothers withheld a portion of the security deposit as a retaliatory measure, and not in good faith. Appellant further contends that Phillips Brothers demonstrated bad faith by retaining November's rent from the security deposit, notwithstanding that Phillips Brothers had actual knowledge that the apartment was illegal to rent.

Phillips Brothers responds by stating that it thought Golt was bound by his lease agreement, which required sixty days notice to vacate. Additionally, Phillips Brothers believed that because Golt did not return the keys to the apartment until the middle of November, and rent was due on the first of each month, Golt was liable for November's rent.

Although the trial judge did not make a specific finding as to whether Phillips Brothers had a reasonable basis to withhold part of the security deposit, he denied

treble damages and attorney's fees. The granting of treble damages and attorney's fees under Maryland Code (1981 Repl.Vol.), § 8–203(f)(4) of the Real Property Article, is discretionary and, although the preferrable practice by a trial court is to make a specific finding as to a landlord's reasonable basis, we hold that the trial judge did not abuse his discretion in denying treble damages and attorney's fees.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM IN PART AND REVERSE IN PART THE JUDGMENT OF THE DISTRICT COURT AND REMAND TO DISTRICT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. APPELLEES TO PAY THE COSTS.