594 A.2d 591

**Eustace HALLOWELL, et ux.**

v.

**Tammy CITARAMANIS, et vir.**

**No. 1060, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Aug. 28, 1991.

■■■■■■■■■

Daniel H. Scherr (Beth A. Jackson and Reese & Carney, on the brief), Columbia, for appellants.

Mary Beth McNamara, Columbia, for appellees.

Argued before MOYLAN, GARRITY and CATHELL, JJ.

GARRITY, Judge.

This unusual landlord-tenant dispute arose when the tenants, Tammy and Michael CitaraManis, sued their former landlords, Eustace and Portia Hallowell, under the Maryland Consumer Protection Act (CPA) for restitution of all rent paid during their eighteen-month tenancy.

Confronted with the CPA in the residential lease context, the Circuit Court for Howard County (Dudley, J.) granted the CitaraManises' motion for summary judgment and awarded them restitution for $15,450, 100 percent of the rent they had paid during the tenancy. Appealing from the judgment, the Hallowells present the following issues for our review:

1.  Whether the Maryland Consumer Protection Act entitles a tenant to restitution of all rents paid under a lease of residential property for the sole reason that the landlord did not inform the tenant that the property was not licensed for occupancy.

2.  Whether the Howard County Housing Code requiring operators of rental property to obtain a license to let premises is a regulatory statute.

3.  Whether the tenants are entitled to restitution for rent payments made pursuant to an alleged illegal contract.

### Statement of Facts

On October 28, 1987, the CitaraManises responded to an advertisement placed by the Hallowells in the Columbia

Flyer, a local newspaper in the Howard County area. In their advertisement, the Hallowells offered for rent a duplex home at 7217 Carved Stone in Columbia, Maryland, a pleasant suburban neighborhood. In responding to the advertisement, the CitaraManises visited and viewed the home. Shortly thereafter, the CitaraManises and the Hallowells entered a one-year lease agreement providing that the CitaraManises would pay $850.00 per month in rent from November 1, 1987 until October 31, 1988, as well as a security deposit of one month's rent.

The one-year tenancy passed without incident. The record reflects that the condition of the house was acceptable to the CitaraManises and that the Hallowells made minor repairs as they were needed.[1] When the one-year lease had expired, the parties orally agreed to extend the lease for an additional six months, on a month-to-month basis, at an increased rent of $875.00 per month.

On March 1, 1989, Tammy CitaraManis informed Portia Hallowell that the CitaraManises intended to vacate the premises on May 1, 1989. Approximately one month after having told the Hallowells that they planned to move, the CitaraManises learned from a representative of the Howard County Office of Licensing and Permits that Howard County had not licensed the premises at 7217 Carved Stone as rental property. This discovery had no effect on the CitaraManises' moving plans; on April 30, 1989 they turned out the lights at 7217 Carved Stone for the last time.

Approximately two months after they had moved out, the CitaraManises filed suit, alleging that the Hallowells had violated the Consumer Protection Act, Md.Com. Law Code Ann. (CL) § 13–301 *et seq.* (1988 Repl.Vol.) by engaging in unfair and deceptive practices. According to the CitaraManises, the circumstances giving rise to the alleged violations consisted of the Hallowells having advertised the

---

1. In their complaint, the CitaraManises alleged that the Hallowells failed to replace a soiled carpet. This allegation, however, had no bearing on the lower court's ruling.

unlicensed rental property, and their failure to disclose the lack of licensure to the CitaraManises. Asserting that they sustained actual damage within the meaning of § 13–408(a) of the CPA, the CitaraManises prevailed on a motion for summary judgment, arguing that the lack of licensure and the Hallowells' failure to inform the CitaraManises of the lack of licensure, in itself, justified restitution of the eighteen months rent they had paid to the Hallowells. In ruling on the parties' cross-motions for summary judgment, the lower court found that the Hallowells had violated the CPA and awarded the CitaraManises $15,450.00, 100 per cent of the rent they had paid during their tenancy. In applying the CPA, the court stated:

The Baltimore City Code and the Howard County Code make it unlawful for persons to lease property that's not inspected and licensed. Indisputably this property was not inspected and licensed for rental. Now, the court said [in *Golt v. Phillips*, 308 Md. 1, 517 A.2d 328 (1986) ] when a person is not told that the property is not inspected and licensed, which the government does for the protection of the public, then that person is entering into an illegal lease; that they're not being afforded an opportunity to refrain from engaging in; and therefore, the rent paid is a benefit to the landlord, the wrongdoer. And in order to insure that forever after landlords have their properties inspected and licensed, we have to take away from the landlords any benefits that they might make in doing it unlawfully. And therefore, by definition, you sustain a damage when you pay rent for an unlicensed place. And therefore the conclusion here was simple. Now, this makes a much stronger case. *Golt*. Communal bathroom and, uh, other significant housing violations. But Howard County Code makes it unlawful for me to rent my house when I move to Florida unless I've had it inspected and licensed for rental.

## Analysis

The Hallowells contend that their failure to inform the CitaraManises of the fact that 7217 Carved Stone was not

licensed with the Department of Public Works did not, in itself, cause the CitaraManises to suffer actual damage for the purposes of recovery under CL § 13–408(a) of the Consumer Protection Act. We agree.

Piloted by its recognition that the doctrine of *caveat emptor* had outlived its social utility, the Maryland General Assembly enacted the Consumer Protection Act (CPA) to equalize the balance of power between consumers and providers of consumer goods and services. CL § 13–102(a).[2] To clarify the types of practices prohibited by the Act, the CPA provides a non-exhaustive list of unfair and deceptive trade practices:

Unfair or deceptive trade practices include any:

(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

(2) Representation that: (i) Consumer ... realty ... have a sponsorship, approval, accessory, characteristic ... which they do not have;

\* \* \* \* \* \*

(3) Failure to state a material fact if the failure deceives or tends to deceive.

CL § 13–301.

Animating the legislative will to "take strong protective and preventive steps to investigate [all] unlawful consumer practices," the CPA arms an aggrieved consumer with two nonexclusive avenues of relief by way of a private right of action as well as a public enforcement action. CL § 13–408(a) (private action), § 13–401 *et seq.* (public action).[3]

---

**2.** *See also Smith v. Att'y General of Maryland,* 46 Md.App. 78, 415 A.2d 651 (1980); Gilligan, *Landlord Beware: Private Actions By Tenants Under the Maryland Consumer Protection Act,* 18 U.Balt. Law Forum 18 (1987).

**3.** Judicial treatment of these provisions has emphasized their nonexclusive nature. *See Devine Seafood v. Att'y General,* 37 Md.App. 439, 377 A.2d 1194 (1977) (statutory remedies not exclusive of each other

■ Although a public action does not preclude a private action, the elements of a private right of action are distinct from those of a public action. To establish a private action, a consumer must demonstrate *"injury* or *loss* sustained ... as the result of a practice prohibited by this title." CL § 13–408(a) (emphasis added). A public action, by way of contrast, does not necessarily require a consumer to prove damage: "Any practice prohibited by this title is a violation ... *whether or not any consumer in fact has been misled, deceived, or damaged* as a result of that practice." CL § 13–302 (emphasis added).

Protecting the CitaraManises, and all residential tenants in Maryland, the CPA specifically prohibits any person from engaging in unfair and deceptive procedures in renting consumer realty and in offering it for rent. CL § 13–303(1) and (2). Prior to the instant case, the judicial gloss given to this section has been limited to *Golt v. Phillips,* 308 Md. 1, 517 A.2d 328 (1986), where the Court of Appeals was confronted with a private action brought by a residential tenant alleging that his landlord violated the CPA by failing to license the premises, as was required by the applicable housing code. In holding that renting an unlicensed dwelling constitutes an unfair and deceptive trade practice under the CPA, the court reasoned that any advertisement and rental of a dwelling unit carries the implicit representation that leasing the unit is lawful. *Id.* at 9, 517 A.2d 328. The applicable housing code in *Golt* expressly prohibited operating a multiple family dwelling without a license; thus, *a fortiori,* the landlord could not provide the right to possession during the lease term. *Id.* By advertising and renting an apartment to which the landlord could not give the right of possession, the representations made to the tenant were necessarily misleading and violated § 13–301(1) of the CPA.

and not exclusive of common-law remedies), *cert. dismissed,* 282 Md. 482, 385 A.2d 85 (1978); *Klein v. State,* 52 Md.App. 640, 452 A.2d 173 (1982) (election of statutory civil or criminal remedies not required), *cert. denied,* 295 Md. 440 (1983).

*Id.* In holding that the landlord also had violated subsection (2), the court reasoned that proper licensing is a fundamental prerequisite to any lease agreement and therefore is implied in the agreement. *Id.* Consequently, the subsection was violated even though the landlord had not made any express representations that the apartment was properly licensed. *Id.* Finally, in determining the landlord's liability for violating subsection (3), the court reasoned that lack of proper licensing is a material fact which the landlord was required to disclose, and that failure to disclose had a tendency to deceive consumers. *Id.* at 10, 517 A.2d 328.

■■ Interpreting § 13–408(a), which sets forth the elements of a private action, the Court in *Golt* stated that "Golt's actual loss is comprised of restitutionary and consequential damages. He is entitled to restitution for the three months of rent paid for the unlicensed apartment, $405.00." *Id.* at 13–14, 517 A.2d 328. Cautioning that the restitutionary remedy is available in a private action only if the aggrieved consumer has suffered injury or loss, the court recognized that it is contrary to the express language of § 13–408 to permit a consumer cause of action if no "actual damages" have been sustained:

Section 13–408 of the CPA sets forth the private remedy created by the act: "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title." This private remedy is purely compensatory; it contains no punitive component. Indeed, any punitive assessment under the CPA is accomplished by an imposition of a civil penalty recoverable by the State under § 13–410, as well as by criminal penalties imposed under § 13–411. *Thus, in determining the damages due the consumer, we must look only to his actual loss or injury caused by the unfair or deceptive trade practices.*

*Id.* at 12, 517 A.2d 328 (emphasis added).[4]

The facts in *Golt* bear repetition insofar as *Golt* guides the instant case by way of distinction. In *Golt*, the tenant, Mr. Golt, responded to Phillips' advertisement offering to rent a furnished apartment for $135.00 per month, plus utilities. Upon inspecting the apartment prior to moving in, Golt and his daughter-in-law discovered that the apartment was in need of cleaning and repair. After having received assurances from the landlord that these needs would be attended to, Golt and his daughter-in-law signed a month-to-month lease and paid the rent for August and a $200.00 security deposit. Golt moved in, but the landlord never made the promised repairs.

Shortly after moving in, Golt complained to the Baltimore City Department of Housing and Community Development about the condition of the apartment. In responding to Golt's complaint, the Housing Inspector discovered the lack of licensure along with substantial housing code violations.[5] Upon receiving the results of the inspection, the Department issued violation notices ordering Phillips to correct the housing code violations and either obtain a proper license or discontinue the use of the building as a multiple family dwelling.[6] Rather than rectifying the situation, Phillips ordered Golt to vacate the apartment, forcing him to rent another apartment for $99.00 more per month than his original rent of $135.00. Phillips also refused to return $173.00 of Golt's security deposit.

---

**4.** Commentary addressing the issue supports the conclusion that a private action requires proof of actual damages. *See* Comment, *Maryland's Consumer Protection Act: A Private Cause of Action for Unfair or Deceptive Trade Practices,* 38 Md.L.Rev. 733, 740 n. 50 (1979).

**5.** These violations included lack of toilet facilities in Golt's apartment, defective door locks, and lack of fire exits and fire doors.

**6.** The housing inspector stated that merely removing one tenant would not abate the multiple family violation.

At this point, we pause to restate the nature of the case before us. At the proceedings below, the CitaraManises alleged that they suffered actual damage solely because they paid rent for an unlicensed premises.[7] In holding that this argument is without merit, we rely upon the relationship between the CPA and the Real Property Article.

In *Golt,* the landlord's failure to inform the tenant of the lack of licensure proximately caused the tenant's injury because the landlord's failure to license the premises gave rise to substantial violations of the applicable housing code, including lack of toilet facilities, defective door locks, and lack of fire exits and doors. These violations existed at the inception of the tenancy and lasted for its duration, notwithstanding the landlord's promise to remedy the situation. Thus, the landlord's wrongful conduct in *Golt* caused the tenant to suffer actual damages because Golt had paid rent for an apartment that had substantial housing code violations within the meaning of the rent escrow statute of the Real Property Article, § 8–211. Md.Ann.Code (1974, 1988 Repl.Vol.) (cataloguing tenant damages for purposes of rent escrow statute); *see also Golt,* 308 Md. at 15, 517 A.2d 328 (landlord who incurred legal liability to another tenant was actually damaged for purposes of retaining security deposit under § 8–203(g)(ii)).

Insofar as the tenant in *Golt* sustained actual damage within the meaning of the Real Property Article, he sustained actual damage within the meaning of § 13–408(a) of the CPA. Indeed, there is nothing in the *Golt* case to suggest that the Legislature intended § 13–308(a) to displace the Real Property Article for the purpose of determin-

---

7. For the first time on appeal, the CitaraManises contend that if they had known that the property was unlicensed, they would not have entered the lease, nor would they have paid any rent to the Hallowells. This misrepresentation argument was neither raised at the proceedings below, nor does it have any factual support. We therefore decline to address it. Md. Rule 8–131(a); *P.V. Properties v. Rock Creek Village Assoc. Ltd. Partnership,* 77 Md.App. 77, 88, 549 A.2d 403 (1988) (appellate court ordinarily will not address issues not decided below).

ing a tenant's actual damages. Unlike the tenant in *Golt*, the CitaraManises allege no actual damages resulting from the Hallowells' failure to obtain a license. Indeed, their only allegation of damage is that they have paid rent for an unlicensed premises.

Having established that housing code violations constitute actual damages for the purposes of an action brought under § 13–408(a) of the CPA, we now explain why the landlord's failure to advise the tenant of the lack of licensure, which is a violation of the Howard County Housing Code, should be treated no differently for purposes of demonstrating actual damages under the CPA than it is under the Real Property Article.

It is uncontroverted that the Hallowells failed to inform the CitaraManises that the property was unlicensed. While the CitaraManises are undoubtedly correct in asserting that the scheme of licensing, inspections, notifications, and penalties set forth in the housing code is designed to encourage compliance with the code, a landlord's failure to inform a tenant that the leased property is unlicensed does not, in itself, demonstrate that the tenant has suffered a diminution in the rental value of the property.

Confronted with a situation identical to the case at bar, the court in *Conaway v. Prestia*, 191 Conn. 484, 464 A.2d 847 (Conn.1983), held that mere payment of rent for premises that were not licensed for occupancy did not constitute actual damages for the purposes of recovery under the Connecticut Unfair Trade Practices Act. *Id.*, 464 A.2d at 853 (cited with approval in *Golt*, 308 Md. at 11, 517 A.2d 328). In *Conaway*, a group of tenants brought a class action, alleging that their landlord had violated the Connecticut Unfair Trade Practices Act by collecting rents without first obtaining certificates of occupancy.[8] In addressing the "vexing problem" presented by the damages issue, the

---

8. The Connecticut statute, like the Maryland statute, prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn.Gen.Stat. § 42–110b(a) (1981).

court distinguished those tenants who had demonstrated housing code violations, apart from the licensing violation, from those who had not made such a showing. In holding that the tenants who had not demonstrated housing code violations were unable to prove actual damages, the court reasoned, "They must be able to present sufficient evidence to enable the trier to ascertain with reasonable certainty the *diminution of the rental value occasioned by the defendants' wrongful conduct." Id.,* 464 A.2d at 853 (emphasis added) (footnote omitted); *accord Curry v. Dunbar House, Inc.* 362 A.2d 686, 689 (D.C.1976) (failure to license premises *de minimus* violation for rent abatement purposes).

Notwithstanding the absence of actual damages, the CitaraManises ask us to perceive their situation as analogous to that of the consumers who purchased used automobiles in reliance upon the defendants' false representations that the cars were new in *Att'y General of Maryland v. Dickson,* 717 F.Supp. 1090 (D.Md.1989), *appeal dismissed,* 914 F.2d 247 (4th Cir.1990), *reh'g denied.* We see no resemblance between *Dickson* and the instant case for the simple reason that *Dickson* involved a *public* enforcement proceeding whereas the CitaraManises brought their suit as a *private* action. In setting forth a private right of action, the plain language of CL § 13–408(a) requires a showing of actual damages: *"In addition to any action brought by the Division or Attorney General ... and any other action authorized by law, any person may bring an action to recover for injury or loss...."* (Emphasis added). A public action, on the other hand, does not require such a showing: "Any practice prohibited by this title is a violation ... *whether or not any consumer in fact has been misled, deceived, or damaged* as a result of that practice." CL § 13–302 (emphasis added). Alluding to the significance of the distinction, the court in *Dickson* observed that a public action is advantageous when, as a practical matter, it may be difficult, if not impossible, to prove the actual damages suffered by each class member in a consumer class action suit:

No actual damages have been claimed or proved, and plaintiffs affirmatively state that they do not seek recovery based on actual damage. The court suspects that plaintiffs have chosen to request the statutory minimum recovery of $1,500 for each violation because of the logistical difficulty of proving actual damages for each of the 355 purchasers.

*Dickson*, 717 F.Supp. at 1105 (commenting upon plaintiffs' decision to pursue public action under § 1989(a) of federal odometer act and to seek injunction under § 13-406(c)(2) of Maryland CPA).[9]

■ As a final matter, the CitaraManises contend that permitting the Hallowells to retain the rent payments allows them to benefit from an illegal contract, which is prohibited by *Golt*. This argument misses its mark. *Golt* precludes an unlicensed landlord from recovering the reasonable value of the premises in *quantum meruit* only if the tenant has sustained actual damage. *Id.* [308 Md.] at 12, 517 A.2d 328. Absent a showing of actual damages, the CitaraManises have failed to establish a loss or injury under CL § 13-308(a); thus, restitution is inappropriate in the instant case.

In light of our holding that the CitaraManises have made no showing of actual damages, we have no reason to address the remaining issues raised by this appeal.

JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEES.

---

9. *See also* Gould, *Staff Report on the Consumer Class Action* in Staff Studies Prepared for the National Institute for Consumer Justice on Consumer Class Action (1972).