720 A.2d 1283

**Max BERG, t/a National Realty Company, et al.**

**v.**

**Allen BYRD, Jr., a Minor, etc. et al.**

**No. 455, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Dec. 4, 1998.

David F. Albright, Jr. (Horn & Bennett, P.A., on the brief), Baltimore, for Appellants.

Scott E. Nevin (Saul E. Kerpelman & Associates, on the brief), Baltimore, for Appellees.

Submitted before DAVIS, HARRELL and EYLER, JJ.

EYLER, Judge.

Appellees, Allen Byrd, Jr., by his mother, Carolyn Byrd, and Carolyn Byrd, individually, filed suit in the Circuit Court for Baltimore City against Max Berg, t/a National Realty Company, et al.,[1] appellants, claiming damages as a result of the minor plaintiff's exposure to lead paint. Appellants were owners and/or managers of the premises in which the minor plaintiff resided. The case proceeded to trial on theories of negligence and violation of the Consumer Protection Act (CPA), Md.Code Ann., Com. Law (CL), Title 13 (1975, 1990 Repl.Vol.). The damages claimed were noneconomic in nature. The jury returned a verdict of $1,000,000 on the negligence count and $500,000 on the CPA count. Pursuant to Md.Code Ann., Cts. & Jud. Proc. (CJ), § 11–108 (1974, 1997 Supp.),[2] commonly known as the "cap statute," appellants moved to reduce the verdict. The trial court reduced the verdict on the negligence count to $350,000, pursuant to the statute, but declined to reduce the verdict on the CPA count. The court entered judgment in favor of appellees in the

---

**1.** Appellees also named as defendants National Realty Company; Steven Berg, t/a National Realty Company; J.A.M. Associates of Baltimore; Max Berg, general partner of J.A.M. Associates of Baltimore; Jerome Golub, general partner of J.A.M. Associates of Baltimore; J.A.M. # 25 Corporation; Gary Waicker, President, Director, Officer of Cavalier Realty Company, Inc.; and Cavalier Realty Company, Inc.

**2.** That section provides in pertinent part:
Personal injury action—Limitation on noneconomic damages.
(b) *Limitation of $350,000.00 established*—(1) In any action for damages for personal injury in which the cause of action arises on or after July 1, 1986, an award for noneconomic damages may not exceed $350,000.00.

amount of $500,000, with the express statement that the total judgment should not exceed $500,000, to avoid duplication of recovery. Appellants filed a motion for new trial and, after it was denied, appealed to this Court. On appeal, we are asked to consider the novel question of when a personal injury claim brought under § 13–408(a) of the CPA arises for purposes of applying the cap statute.

## Facts

The minor plaintiff, Allen Byrd, Jr., was born on December 1, 1983. Allen first was evaluated for blood lead levels on July 29, 1987. At that time, his blood lead level was 41 micrograms per deciliter (mc/dl), a level in excess of the 25 mc/dl considered safe in 1987 and the 10 mc/dl considered safe at the time of trial. Appellees' expert, Howard Klein, M.D., opined that such a level meant that Allen had been exposed to lead paint weeks to months prior to July 29, 1987. Dr. Klein further opined that, as a result of such exposure, Allen suffered permanent neurological damage, manifesting in a loss of five to ten IQ points and a language disability.

At the time of the first blood lead level test on July 29, 1987, Allen was residing at 820 North Monroe Street, the premises owned and/or managed by appellants, and had been residing there since March 1, 1986.[3] A lease for that premises had been executed in February, 1986.

## Discussion

Appellants present a single issue: whether the trial court erred in refusing to reduce the verdict on the CPA count to $350,000. The answer to that issue depends on when the cause of action arose for purposes of CJ § 11–108 because, by its express terms, CJ § 11–108 applies only to actions that arise on or after July 1, 1986, the effective date of the statute.

---

**3.** At the motions hearing below, appellees indicated that they moved into the premises on March 1, 1986, while on appeal they state that they moved into the premises in February, 1986. The precise date is not essential to this appeal. Consequently, we shall use the date provided to the trial court.

Based on certain imprecise aspects of Dr. Klein's testimony and the inability to extend reasonable inferences to what the doctor did state, appellants argued below that they were entitled to a finding that appellees' claims arose after July 1, 1986, and, thus, the verdicts should be reduced in accordance with CJ § 11–108. Appellees argued, with respect to both the negligence and CPA claims, that the evidence supported a finding that the minor plaintiff was exposed to lead paint from the inception of his occupancy of the leased premises on March 1, 1986, and that such exposure caused him injury from the very beginning. With respect to the CPA claim, appellees additionally argued that that claim arose at the time appellants made misrepresentations or omissions upon the signing of the lease in February, 1986, presumably with or without injury. The trial court made a finding of fact that the negligence cause of action arose after July 1, 1986 and, pursuant to the cap statute, reduced the judgment with respect to the negligence count. While the transcript is not entirely clear, the trial court apparently accepted appellees' argument that the CPA claim arose at the signing of the lease and refused to reduce the CPA judgment.

The parties' arguments on appeal are the same as those asserted below. Appellants argue that the CPA claim did not arise until damages had been sustained and that there is no evidence to support a finding that damages had been sustained prior to July 1, 1986. Appellees argue (1) that, regardless of the date of injury, the cause of action arose in February, 1986, at the time of the lease, and (2) that there was evidence that the minor plaintiff was exposed to lead paint from the inception of occupancy pursuant to the lease and that a fact finder could infer injury beginning on March 1, 1986.

Subtitle 3 of the CPA defines the unfair or deceptive trade practices prohibited by the Act. Section 13–301 lists the types of practices that constitute unfair or deceptive trade practices. Section 13–303 expressly "'prohibits any person from engaging in unfair and deceptive procedures in the rental or offer for rental of consumer realty.'" *Richwind Joint*

*Venture 4 v. Brunson,* 335 Md. 661, 682, 645 A.2d 1147 (1994) (quoting *Golt v. Phillips,* 308 Md. 1, 8, 517 A.2d 328 (1986)). More specifically, renting a premises with knowledge that it contains chipping, flaking, or peeling lead-based paint, and without disclosing such condition, may constitute a violation of the CPA. *See Brunson,* 335 Md. at 686, 645 A.2d 1147; *Scroggins v. Dahne,* 335 Md. 688, 696, 645 A.2d 1160 (1994). Appellees are correct that, in *Brunson,* the Court of Appeals held that the CPA imposes liability only for material misrepresentations or omissions occurring at the inception of the lease, and not those made throughout the term of the lease. 335 Md. at 685, 645 A.2d 1147. Accordingly, the relevant time period to consider when determining whether there has been a violation of the CPA is the time the parties enter into the lease. Appellees are incorrect, however, that it necessarily follows that an actionable CPA claim arises at the signing of the lease.

▮ Subtitle 4 of the CPA sets forth the enforcement and penalties provisions of the Act. Among other things, this subtitle provides for the filing of consumer complaints with the Division of Consumer Protection of the Office of the Attorney General (§ 13–401), the issuance of cease and desist orders by the Division (§ 13–403) and the imposition of civil (§ 13–410) and criminal penalties (§ 13–411). In addition, it empowers the Attorney General to seek an injunction prohibiting future violations of the Act. (§ 13–406). Section 13–408 creates a private cause of action for violations of the Act. It provides in pertinent part that

> [i]n addition to any action by the Division or Attorney General authorized by this title and any other action otherwise authorized by law, any person may bring an action to recover **for injury or loss sustained by him** as the result of a practice prohibited by this title.

CL § 13–408(a) (emphasis added). While many of the enforcement mechanisms of the CPA may be instituted to prevent harm before the harm has occurred, § 13–408(a), by its express terms, may be invoked only to compensate a consumer

for actual injury or loss. *See CitaraManis v. Hallowell,* 328 Md. 142, 152–55, 157–58, 613 A.2d 964 (1992).

In *CitaraManis,* the Court of Appeals reversed summary judgment that had been entered in favor of the tenant appellees based upon the undisputed fact that the dwelling rented by the tenants did not possess the requisite licensure from Howard County. Relying upon *Golt, supra,* the trial court had concluded that the tenants were entitled to restitution of the rent they had paid during their tenancy, despite lack of a showing that they had sustained any damages. The Court of Appeals explained that the trial court had misunderstood its holding in *Golt.*

It noted that in *Golt* there had been obvious actual damage resulting from the landlord's violations of the CPA inasmuch as the tenant had paid rent for an uninhabitable premises. Accordingly, *Golt* was entitled to recover

> compensatory damages consisting of restitution of the rent which he had paid for three months for the uninhabitable apartment and consequential damages, such as the cost of moving from the premises and the additional cost of substitute housing for the remainder of the term of the lease which he had entered with [the landlords].

328 Md. at 149, 613 A.2d 964. Despite the Court's use in *Golt* of some broad language relied upon by the tenants, the Court clarified that *Golt* does not stand for the proposition that a landlord's rental of a premises in violation of the CPA entitles a tenant to restitution of rent, regardless of whether the tenant sustained damages. *See id.* at 149–50, 613 A.2d 964. Thereafter, the Court compared the CPA to consumer protection acts from other jurisdictions and concluded that the Maryland CPA confers a private cause of action only in those instances when the plaintiff has sustained damages resulting from violations of the Act. *See id.* at 150–55, 613 A.2d 964.

Given that injury or loss is a prerequisite for a claim brought under CL § 13–408(a), we agree with appellants that appellees' actionable CPA claim under the facts of this case did not arise until appellees had sustained legally compensable

injury, *i.e.*, personal injury non-economic damages. A cause of action arises within the meaning of CJ § 11–108 " 'when facts exist to support each element' " of the cause of action. *Owens–Illinois v. Armstrong,* 326 Md. 107, 121, 604 A.2d 47 (1992) (quoting *Owens–Illinois v. Armstrong,* 87 Md.App. 699, 724–25, 591 A.2d 544 (1991)). In a negligence case, injury is the last element to come into existence. *Anchor Packing v. Grimshaw,* 115 Md.App. 134, 156, 692 A.2d 5 (1997), *vacated in part on other grounds sub nom., Porter Hayden Co. v. Bullinger,* 350 Md. 452, 713 A.2d 962 (1998). Consequently, in a case involving negligence, we have held that a claim does not arise within the meaning of CJ § 11–108 until the plaintiff has sustained a legally compensable injury. *Id.* at 156, 160, 692 A.2d 5; *Ford Motor Company v. Wood,* 119 Md.App. 1, 45 n. 11, 703 A.2d 1315, *cert. denied,* 349 Md. 494, 709 A.2d 139 (1998). Similarly, given that proof of injury is required in order to entitle a plaintiff to compensation for a violation of the CPA, an actionable cause of action under the CPA does not arise until the plaintiff has sustained injury resulting from the violation.

The injury for which appellees sought recovery under the CPA in the instant case were the ***personal injuries*** stemming from the minor plaintiff's ingestion of lead paint and resulting lead poisoning. This was not a case, as was the case in *Golt,* involving recovery of any pecuniary damages appellees may have sustained merely as result of renting a premises that was uninhabitable or a premises whose rental value was inflated. Indeed, if appellees had demonstrated that the condition of the premises upon the inception of the lease was such that they suffered injury just by virtue of their occupation of the premises, they may have been entitled to damages in the form of restitution of rent. Such a claim, for pecuniary loss rather than personal injury, would have arisen upon their occupation of the premises on March 1, 1986, and such a claim would not have been subject to the statutory cap which, by its express terms, applies only to personal injury claims. Appellees' asserted claim under the CPA, however, was a personal injury

claim (hence application of the cap statute in the first instance) which did not arise until appellees sustained personal injury.

Ordinarily, the question of when a compensable claim arises requires a factual determination. *See Wood,* 119 Md.App. at 48, 703 A.2d 1315; *Grimshaw,* 115 Md.App. at 165, 692 A.2d 5. In the case before us, the trial court made a factual determination that appellees' negligence claim did not arise until after July 1, 1986. Implicit in such a determination is a factual finding that appellees did not sustain compensable injury as a result of lead exposure until after that date. That finding was not clearly erroneous. Indeed, in our view, the evidence requires a finding that appellees sustained compensable injury after July 1, 1986, and consequently their CPA claim arose after July 1, 1986. Allen's first elevated blood lead level occurred on July 29, 1987, and there is no evidence to support a finding that his blood lead level was elevated above acceptable levels prior to July 1, 1986. Contrary to appellees' contentions, Dr. Klein did not testify that any exposure to lead, no matter how small, causes demonstrable injury to children. Nor did he testify that, in fact, Allen sustained physical injury on or prior to July 1, 1986. Consequently, we agree with the appellants and direct the Circuit Court for Baltimore City to reduce the judgment in this case to $350,000.

**CASE REMANDED TO CIRCUIT COURT FOR BALTIMORE CITY FOR ENTRY OF APPROPRIATE ORDER REDUCING JUDGMENT FROM $500,000 TO $350,000. COSTS TO BE PAID BY APPELLEES.**