ANNETTE CONAWAY ET AL. *v.* ALFRED PRESTIA ET AL.
(10954)

HEALEY, PARSKEY, SHEA, GRILLO and SPONZO, Js.

Argued June 9—decision released September 13, 1983

*John D. Blackford,* with whom, on the brief, was *Anthony J. Monterosso,* for the appellants (defendants).

*David A. Pels,* for the appellees (plaintiffs).

GRILLO, J. This appeal addresses issues concerning the applicability and scope of the Connecticut Unfair Trade Practices Act (hereinafter CUTPA); General Statutes §§ 42-110a through 42-110q;[1] in an action seeking, inter alia, recovery of rental payments obtained in violation of §§ 47a-5[2] and 47a-57[3] (formerly § 19-347r) of the General Statutes.

---

[1] General Statutes § 42-110b states: "UNFAIR TRADE PRACTICES PROHIBITED. LEGISLATIVE INTENT. (a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

"(b) It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)), as from time to time amended.

"(c) The commissioner may, in accordance with chapter 54, establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of subsection (a) of this section. Such regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act.

"(d) It is the intention of the legislature that this chapter be remedial and be so construed."

[2] "[General Statutes] Sec. 47a-5. (Formerly Sec. 47-24a). NO RENT RECOVERABLE FOR PERIOD OF UNLAWFUL OCCUPATION. In any borough, city or town which requires a certificate of occupancy prior to human habitation of any building located therein, if any building is occupied in whole or in part without such occupancy permit, rent shall not be recoverable by the owner or lessor of the premises for such period of unlawful occupation."

[3] "[General Statutes] Sec. 47a-57. (Formerly Sec. 19-347r). CERTIFICATE OF OCCUPANCY REQUIRED FOR LAWFUL OCCUPATION. NO RENT RECOVER-

The relevant facts are not in dispute. The defendant landlords own four apartment buildings in the city of New Britain. At all times relevant to the present appeal, each building was at least fifteen years old and contained more than four rental units. In 1973, New Britain adopted the provisions of General Statutes (Rev. to 1972) § 19-347r and limited its applicability to buildings containing four or more housing units, thereby requiring a certificate of occupancy, after a vacancy and prior to human habitation, for each rental unit in the defendants' buildings.[4]

ABLE DURING UNLAWFUL OCCUPATION. EXCEPTIONS. (a) An apartment or dwelling unit in any structure containing three or more housing units in any municipality which adopts the provisions of this section by vote of its legislative body shall not be occupied for human habitation, after a vacancy, until a certificate of occupancy has been issued by the person designated by the legislative body, of such municipality to administer the provisions of this section, certifying that such apartment or dwelling unit conforms to the requirements of the applicable housing ordinances of such municipality and this chapter. No provision of this section shall apply to any structure occupied by the owner thereof and containing three or less housing units. No provision of this section shall be construed to prohibit human occupancy of such apartment or dwelling unit during the pendency of an application of such certificate.

"(b) Any person aggrieved by the refusal of a certificate of occupancy may appeal to the superior court for the judicial district within which the structure is located. Such appeal shall be privileged.

"(c) No rent shall be recoverable by the owner or lessor of such structure for the occupation of any apartment or dwelling unit for which a certificate of occupancy has not been obtained prior to the rental thereof in violation of subsection (a) of this section.

"(d) The provisions of this section shall not apply to any structure which has been constructed or substantially reconstructed within the ten year period immediately before the date such certificate of occupancy would otherwise be required under this section. The provisions of this section shall not apply to any apartment house owned by a housing authority organized under the provisions of chapter 128, which has been constructed or altered pursuant to a contract with the federal government or the state providing for annual contributions or other financial assistance."

[4] "Sec. 13.88 Certificate of Occupancy in Tenement Houses.

"Pursuant to the provisions of Section 19-347r, Connecticut General Statutes, the City of New Britain adopts all the provisions of said public act

In May, 1979, the defendants received written notice from the city of New Britain informing them of the requirement that certificates of occupancy be obtained prior to any units being rented. Although the defendants applied for certificates of occupancy on one of the buildings, their application was denied. A certificate has not been obtained for any of the units within the four buildings owned by the defendants.

The plaintiffs are fifty-five tenants who rented units in the defendants' buildings from May, 1979, through October, 1980. Each plaintiff rented his apartment after a vacancy. From May, 1979, through October, 1980, the defendants collected $58,695 in rent from the tenants in the plaintiff class.

The plaintiffs instituted this action in May, 1980, seeking compensatory and punitive damages as well as injunctive relief. The fulcrum of the plaintiffs' complaint is that the defendants' failure to comply with General Statutes §§ 47a-5 and 47a-57, as well as General Statutes (Rev. to 1979) § 47a-4 (c) and § 47a-7 (a),[5] constituted "unfair or deceptive acts" within the

concerning certificates of occupancy for tenement houses containing four (4) or more housing units, and designates the Building Inspector of the City of New Britain to administer the provisions of said Section 19-347r as adopted by the Connecticut General Assembly, January session 1971."

New Britain Ordinances of the Common Council, c.X, § 77 (1973).

[5] General Statutes § 47a-7 (a) states: "LANDLORD'S RESPONSIBILITIES. (a) A landlord shall: (1) Comply with the requirements of chapter 368o and all applicable building and housing codes materially affecting health and safety of both the state or any political subdivision thereof; (2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition, except where the premises are intentionally rendered unfit or uninhabitable by the tenant, a member of his family or other person on the premises with his consent, in which case such duty shall be the responsibility of the tenant; (3) keep all common areas of the premises in a clean and safe condition; (4) maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating and other facilities and appliances and elevators, supplied or required to be supplied by him; (5) provide and maintain appropriate receptacles for the

purview of CUTPA. Class certification was subsequently granted. At trial, the testimony of three officials of the city of New Britain established that each of the defendants' buildings contained numerous and severe housing and health code violations. The case was thereafter submitted to the trial court on a stipulation of facts as recited above.

The trial court found that the apartments "were uninhabitable and constituted a serious threat to the health and welfare of the plaintiff occupants," and that therefore the defendants had failed to discharge their responsibilities pursuant to § 47a-7. Accordingly, the court enjoined the defendants from evicting the plaintiffs; General Statutes § 47a-4a; and from any further collection of rents without first obtaining certificates of occupancy. General Statutes §§ 47a-5, 47a-57.

Additionally, the court concluded that the plaintiffs were entitled to damages under the provisions of CUTPA. Noting the continued collection of rents despite the uninhabitability of the apartments and without certificates of occupancy as required by §§ 47a-5 and 47a-57 and as ordered by New Britain officials, the court characterized the actions of the defendants as "unfair or deceptive acts or practices."

removal of ashes, garbage, rubbish and other waste incidental to the occupancy of the dwelling unit and arrange for their removal; and (6) supply running water and reasonable amounts of hot water at all times and reasonable heat except if the building which includes the dwelling unit is not required by law to be equipped for that purpose or if the dwelling unit is so constructed that heat or hot water is generated by an installation within the exclusive control of the tenant or supplied by a direct public utility connection."

General Statutes (Rev. to 1979) § 47a-4 (c) states: "A rental agreement shall not permit the receipt of rent for any period during which the landlord has failed to comply with subsection (a) of section 47a-7." This subsection has subsequently been moved, without material change, to § 47a-4a of the General Statutes.

The court construed the plaintiffs' "actual damages"; General Statutes § 42-110g (a);[6] as the rents illegally collected from May 1, 1979, through October, 1980. Although noting that the defendants are entitled to a setoff against any recoverable sum for the reasonable use and occupancy value of the occupied rental units, the court held that the burden of proving this occupancy value rested upon the defendants. Since evidence concerning the reasonable value of the rental units was established for only three members of the plaintiff class, the court entered a setoff in favor of the defendants only to the extent of the reasonable use and occupancy value of the units occupied by these plaintiffs.[7] After appointing a receiver of rents, the trial court rendered judgment for the plaintiffs, from which judgment the defendants appeal.[8]

On appeal, the defendants present the following primary issues: (1) Whether the trial court erred in concluding that §§ 47a-5 and 47a-57 impose a duty upon landlords to obtain certificates of occupancy; (2) whether the trial court erred in concluding that the defendants' actions amounted to unfair or deceptive

[6] Subsection (a) of General Statutes § 42-110g states: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."

[7] After rendering judgment in favor of the plaintiff class in the amount of $58,685, the court awarded a setoff of $1955 in favor of the defendants as the reasonable value of the use and occupancy for the apartment units of three of the plaintiffs.

[8] Although the trial court construed the plaintiffs' complaint as asserting an implied cause of action to recover rents for violations of the Landlord and Tenant Act; General Statutes §§ 47a-1 through 47a-74; the court specifically declined to address this issue in view of its resolution of the claim under CUTPA.

trade practices; (3) whether the trial court erred in its award of compensatory damages and in its concomitant allocation of the burden of proof concerning the issue of damages.

The threshold issue presented by the defendants attacks the trial court's conclusion that §§ 47a-5 and 47a-57 impose a duty upon landlords to procure certificates of occupancy prior to the lawful collection of rent. The defendants argue that either the tenant or the landlord may apply for the certificate and that therefore no "specific" duty rests upon the defendants. We disagree.

The contention of the defendants is adequately addressed by the clear language of the statutes. Subsection (a) of § 47a-57 unequivocally states that "housing units . . . shall not be occupied for human habitation, after a vacancy, until a certificate of occupancy has been issued . . . ." Under both subsection (c) of § 47a-57 and § 47a-5, the failure to comply with subsection (a) prohibits the "owner or lessor" from recovering rents. Moreover, under the specific mandates of § 47a-7, entitled "Landlord's Responsibilities," a landlord must "[c]omply with the requirements of . . . all applicable building and housing codes materially affecting health and safety of both the state or any political subdivision thereof; (2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition, except where the premises are intentionally rendered unfit or uninhabitable by the tenant . . . ."

The unmistakable import of these statutes places the burden upon the landlord to obtain the required certificate of occupancy. Pursuant to § 47a-57, the certificate is required after a vacancy and prior to "human habitation," an interval during which only an owner

would have any authority to secure the certificate. Failure to comply imposes sanctions only upon the "owner or lessor" by forbidding the recovery of rents. Finally, it is specifically the duty of the landlord to comply with all applicable building and housing codes, which form the raison d'etre for the certificate of occupancy. We conclude that § 47a-57 "establishes a procedure whereby landlords must obtain a Certificate of Apartment Occupancy . . . before renting any apartment in an apartment house containing four or more dwelling units." (Footnote omitted.) *Hill Construction Co.* v. *State,* 366 F. Sup. 737, 738 (D. Conn. 1973). The contention of the defendants lacks validity, legally and pragmatically.[9]

Citing numerous cases, the defendants vigorously attack the finding of the trial court that the defendants engaged in any unfair or deceptive acts or practices as prohibited by General Statutes § 42-110b.[10] In light of the subordinate facts recited above, however, we agree with the trial court's conclusion that CUTPA creates a private cause of action to recover damages based upon violations of §§ 47a-57 and 47a-5.[11]

[9] Although the defendants argue that General Statutes § 47a-5 is totally inapplicable to the facts of this case since that section applies exclusively to new buildings which have not been previously occupied, it is unclear what they hope to gain by pressing this claim. Even if we assume, arguendo, that the defendants are correct in their contention, the provisions of § 47a-57 adequately support the conclusion of the trial court.

[10] In a subsidiary claim, the defendants bemoan the fact that the trial court failed to specify what actions of the defendants constituted unfair or deceptive acts or practices. While we disagree with the defendants' contention that it is unclear what facts the court relied upon in rendering its decision, the short answer to the defendants' claim is that they failed to file a motion for articulation with the trial court. *Barnes* v. *Barnes,* 190 Conn. 491, 493–94, 460 A.2d 1302 (1983).

[11] The defendants make the additional claim that the trial court misconstrued the scope of General Statutes §§ 47a-5 and 47a-57 (c) by interpreting the statutory term "recoverable" to include the meaning of the words "receipt" and "collected." It is the defendants contention that these

"For guidance in determining what may constitute unfair or deceptive acts or practices, CUTPA directs us to the 'interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)) . . . as from time to time amended.' General Statutes § 42-110b (b)." *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* 190 Conn. 528, 533, 461 A.2d 1369 (1983). We have held that, as a threshold requirement, private litigants proceeding under CUTPA "must demonstrate some nexus with the public interest." Id., 537.

In *FTC* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972), the United States Supreme Court, in construing the scope of the Federal Trade Act and the concomitant power of the federal trade commission, concluded that "legislative and judicial authorities alike convince us that the Federal Trade Commission does not arrogate excessive power to itself if, in measuring a practice against the elusive, but congressionally mandated standard of fairness, it, like a court of equity, considers public values beyond simply those enshrined in the letter or encompassed in the spirit of the . . . laws." (Footnote omitted.) Id., 244. The court thereupon proceeded favorably to cite the factors considered by the commission in determining whether an action or practice, while not explicitly in violation of the law or deceptive, is nevertheless unfair: " '(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words,

---

statutes, while barring recovery of unpaid rents, do not explicitly prohibit the defendants from "receiving" or "collecting" rents voluntarily paid. We agree. See footnote 13, infra. Even if voluntarily paid, the fact that these statutes simply bar recovery, however, does not preclude the plaintiffs from maintaining an action pursuant to § 42-110b.

it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers . . . .' " Id., 244n.

In the present case the defendants' actions of receiving the rent, while not specifically prohibited pursuant to §§ 47a-5 and 47a-57, unquestionably offended the public policy, as embodied by these statutes, of insuring minimum standards of housing safety and habitability. As recited above, § 47a-57 imposed a duty upon the defendants to obtain certificates of occupancy after a vacancy and prior to human habitation. The defendants, with full awareness of this requirement, nonetheless failed to secure the certificates and continued to accept rental payments, the collection of which they had no right to enforce. The actions of the defendants amounted to unfair acts or practices within the meaning of § 42-110b.

The question of damages presents a more vexing problem. Pursuant to General Statutes § 42-110g (a), "[a]ny person who suffers any *ascertainable loss* of money or property . . . as a result of . . . a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover *actual damages.*" (Emphasis added.) The trial court awarded the plaintiffs actual damages equal to the total rents paid from May 1, 1979, through October, 1980, and concluded that it was the defendants' burden to establish, by way of a setoff, that damages should be reduced by the reasonable use and occupancy value of the units. In effect, the court placed the burden of proving actual damages upon the defendants.

It is axiomatic that a claimant seeking damages bears the burden of proving, with reasonable certainty, those

damages sustained as a result of his injury. *Fox* v. *Mason,* 189 Conn. 484, 488, 456 A.2d 1196 (1983); *Pacelli Bros. Transportation, Inc.* v. *Pacelli,* 189 Conn. 401, 410, 456 A.2d 325 (1983); *Johnson* v. *Flammia,* 169 Conn. 491, 500, 363 A.2d 1048 (1975). Although damages often are "not susceptible of exact pecuniary computation and must be left largely to the sound judgment of the trier"; *Johnson* v. *Flammia,* supra; this situation does not invalidate a damage award as long as "the evidence afforded a basis for a reasonable estimate by the [trier] of that amount." *Paiva* v. *Vanech Heights Construction Co.,* 159 Conn. 512, 517, 271 A.2d 69 (1970).

Under CUTPA, "[t]he ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief." (Footnote omitted.) *Hinchliffe* v. *American Motors Corporation,* 184 Conn. 607, 615, 440 A.2d 810 (1981). By alleging and proving the receipt of rent by the defendants under the circumstances recited above, the plaintiffs have satisfied this threshold requirement. In their complaint, however, the plaintiffs seek actual damages, and argue that the appropriate recovery thereof under CUTPA is the return of all rent money collected by the defendants. The validity of the plaintiffs' claim under CUTPA does not, ipso facto, require the court to return the rent money. Nor does the existence of the claim shift the burden of proof as to the reasonable use and occupancy value of the units to the defendants. Since the plaintiffs have chosen to seek damages under § 42-110g, they are bound by the statutory requirement of proof of actual damages.

In the present case it is undisputed that the plaintiff class paid $58,695 in rent to the defendants. Their injury was the failure of the defendants to obtain the

required certificates of occupancy and the concomitant substandard conditions of the units, which is adequately supported by the record. What the plaintiffs failed to establish, at least with respect of fifty-two members of the plaintiff class, was the actual damages occasioned by the injury. They must present sufficient evidence to enable the trier to ascertain with reasonable certainty the diminution of the rental value occasioned by the defendants' wrongful conduct.[12]

We conclude that the trial court erred only as to its determination of damages and its allocation of the burden of proof under § 42-110g. Accordingly, the judgment is set aside, the case is remanded and a new trial is ordered limited solely to the issue of damages as to each member of the plaintiff class.[13]

In this opinion the other judges concurred.

---

[12] We note that the trial court used a "rent received minus reasonable use and occupancy value" as one method to arrive at an actual damage figure as to three plaintiffs — a permissible method of determining actual damages.

[13] The plaintiffs submit that should we find any material issue in favor of the defendants, the case should be remanded to the trial court for a resolution of the question of whether the plaintiffs have an implied cause of action under the Landlord and Tenant Act. General Statutes §§ 47a-1 through 47a-74. We refuse to remand on this basis.

Although the trial court found that the plaintiffs did not "voluntarily" pay their rents, the record is devoid of support for this finding. The only reasonable conclusion, based on the evidence presented and the stipulation of facts, is that the plaintiffs voluntarily paid rents to the defendants, albeit in ignorance of their rights under §§ 47a-5 and 47a-57 (c). There is no basis, therefore, to distinguish the present case from our holding in *Smith* v. *Dreamy Hollow Apartments Corporation,* 150 Conn. 702, 703–704, 192 A.2d 648 (1963), which we find dispositive of this issue.

We find no valid basis for the defendants' additional claim that the court erred in appointing a receiver of rents. Such an appointment is well within the equitable powers of the court as specifically authorized by General Statutes § 42-110g (a).