[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action for damages was brought by the plaintiff tenant alleging violations of Conn. Gen. Stats. 47a-43, 53a-119 and 42-110b
(hereinafter CUTPA) and of certain common law rights.
The court finds the following facts. Lisa Gaylord leased premises at 49 Sumner Road, Greenwich, under an oral rental agreement from Carol Mosher. Carol Mosher's daughter, Margaret (Molly) lived in the same house together with one Carolyn Luxe. Molly Mosher and the plaintiff had moved into the Sumner Road house after having shared rented quarters for twenty months in Pound Ridge, New York. Prior to the alleged lockout sometime between May 9 and May 13, 1991 the two young women were good friends. In fact, the plaintiff often visited Carol Mosher's residence, helped assist Mrs. Mosher's mother after eye surgery, taught another daughter horseback riding and dined with Mrs. Mosher's family weekly. Mrs. Mosher was, at the time of trial, caring for the plaintiff's dogs.
An altercation between Molly Mosher and the plaintiff's sister, Kim Gaylord, ensued on May 8, 1991. The police were called and Kim Gaylord was arrested. Subsequently on May 9, the plaintiff left for a previously planned four-day trip to Florida. At some point after her departure, the defendants packed up her belongings and changed the locks to the premises. They put her belongings in the garage where the plaintiff's, two cars were parked, a station wagon and a rented BMW.
When the plaintiff returned by limousine on May 13, she found a note (Plaintiff's Exhibit B) in the garage which she interpreted as putting her at risk of arrest. Accordingly, she left the premises immediately, leaving her possessions in the garage. She stayed at a hotel and then found other living quarters.
Conn. Gen. Stat. 47a-43 provides, inter alia that it is an actionable offense when one enters into a dwelling unit and causes removal of or detention of the personal property of the possessor of that dwelling unit, and where the person put out of possession would have to breach the peace in order to regain the leased premises. The defendants conceded at trial that they had arranged to pack the plaintiff's belongings and remove them to the garage. Deadbolt locks were installed on the house proper thereby preventing the plaintiff from gaining access without the appropriate key. All this occurred without the plaintiff's knowledge or consent. The court, therefore, finds that the defendants caused an illegal lockout.
The plaintiff also asserts a breach of the lease agreement and of the covenant of quiet enjoyment. That covenant is described in Net Realty Holding Trust v. Nelson, 33 Conn. Sup. 22, as follows: "(t)he CT Page 7557 grantee shall have legal quiet and peaceful possession and is broken . . . by an entry on and an expulsion from the land. . . . The obligation of the landlord. . . is extended only to evictions and disturbances caused by himself. . . ." (at 25).
By May 9 the plaintiff had paid the full May rent of $600 in furtherance of the month-to-month tenancy; hence she was entitled to the peaceful possession of the premises through May 31. The defendants breached that implied covenant by unceremoniously packing Lisa Gaylord's belongings into plastic bags and placing them in the garage. The photographs (Plaintiff's Exhibit C 1-5) show clothes stuffed into bags giving the lie to the defendants' testimony that Carol Mosher's servants packed the clothes and items "professionally". It defies credence to believe, as the defendants suggest, that the goods were packed into boxes and then disarranged by Ms. Gaylord upon a visit to the garage, this especially in view of the note left with her effects threatening Ms. Gaylord with arrest should she return to the premises.
Further the plaintiff alleges that the defendants committed larceny in violation of 53a-119 which provides that "(A) person commits larceny when, with intent to deprive another of property. . . he wrongfully takes, obtains or withholds such property from an owner." Under section (a)(5) an "owner" is "the person who has a right to possession superior to that of the taker. . . ." "Property" in (a) a) is defined as "any. . . personal property, (and) real property . . . ." The court finds that the defendants had no intention to deprive the plaintiff of her personal property. However, the plaintiff proved by clear and convincing evidence that they intended to deprive her of her leasehold interest. At the point the lockout occurred the plaintiff had superior rights to possession.
Similarly the plaintiff alleges that the defendants converted her personal belongings. The court in Halloran v. Spillane's Servicenter, Inc., 41 Conn. Sup. 484 said "`Conversion is. . . (the) unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . The essence of the wrong is that the property rights of the (owner) have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm. . . . (Citations omitted,)'" (at 498). It is of no consequence that the possessions were available to the plaintiff upon her return. She could not immediately take them with her upon arriving at Sumner Road on the 13th; she had nowhere to move them and she had two cars to take away. Carol Mosher's letter threatening her with arrest should she return put her in fear of some criminal prosecution as had occurred with her sister several evenings earlier. Molly Mosher's testimony as to removing all of the plaintiff's belongings in several rooms and of packing them with her mother's servants is clear and convincing evidence that the defendants dealt with Ms. Gaylord's possessions CT Page 7558 in a manner adverse to her.
As a result of these statutory and common law offenses, the plaintiff urges the court to find that the defendant Carol Mosher violated CUTPA. Section 42-110b(a) states that "(N)o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or business." "Person" defined in 42-110a(3) means inter alia, a "natural person". Section (a)(4) provides that "`trade' and `commerce' means the sale or rent or lease. . . of any property. . . real, personal or mixed. . . ."
An unfair practice is more difficult to describe as it is a more subjective standard. However, the legislature intended that Connecticut courts should be guided by interpretations given by the Federal Trade Commission and the federal courts to section 5(a) (1) of the Federal Trade Commission Act (15 U.S.C. § 45 (a) 1).Section42-110b(b). The Connecticut court has followed language set forth in Sperry Hutchison Co., 405 U.S. 233. That case cited "factors considered by the (Federal Trade C)ommission in determining whether an action or practice, while not explicitly in violation of the law or deceptive, is nevertheless unfair: "`(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it cause substantial injury to consumers. . . . In See Conaway v. Prestia,191 Conn. 484, 492-493.
There is greater difficulty proving a CUTPA violation with regard to the third requirement: that the act occurred in the conduct of a trade or business. Here that means finding that Carol Mosher is in the trade or business of renting dwelling units.
Plaintiff would urge upon the court the ruling of Conaway Prestia which held CUTPA applicable to the landlord-tenant relationship. In Conaway, supra, the court found that the landlords, who owned several buildings of several units each, had violated various statutes enacted to protect the health and safety of tenants. These violations offended public policy and therefore constituted a CUTPA violation.
The defendants cite several Superior Court cases for the proposition that CUTPA does not include single, solitary transactions which do not occur in the conduct of a trade or business. McCarthy v. Fingelly, et al., 4 Conn. Law Rptr No. 7,222 (July 1, 1991); Skinner, et al. v. Till et al., 3 Conn. Law Rptr. No. 19, 627 (May 6, 1991). Guastamachio v. United Laboratory, et. al., 15 CLT 34 (June 19, 1989); Basile et al. v. Wosniak, et al., 15 CLT 23 (June 12, 1989); Keeler v. CT Page 7559 Deuth, et al., 14 CLT 41 (October 17, 1988); Sargis, et. al. v. Seventy Grove Hill Condominium Association, Inc., et al. 16 CLT 33 (August 20, 1990); Bertrum. et al. v. Miller, et al., 15 CLT 15 (April 10, 1989); Lantner v. Carson, 373 N.E.2d 973, 977 (Mass., 1978); Rousseau v. Gelinas, 507 N.E.2d 265, 268 (Mass., 1987). Most of the cases cited dealt with the sale and purchase of a personal residence within the scope of which the court found no conduct of a trade or business.
Militating against a finding of a CUTPA violation is the fact that Lisa Gaylord resided at the premises because she had lived with Molly Mosher for twenty months in Pound Ridge, New York. She testified that they were seeking to move from Pound Ridge but did not require all the space provided by Sumner Road. Nevertheless, Carol Mosher agreed that Lisa Gaylord need pay only $600 per month for rent, although she testified that the fair rental value was $3850. Meanwhile, Ms. Gaylord enjoyed a very friendly relationship with the Moshers. The Court cannot speculate as to the reasons why this relationship suddenly curdled and suspects other forces might have been at work.
Here the facts take the case beyond a single transaction. The plaintiff was residing in a home which Mrs. Mosher had authority to lease out. It was not serving as the family home which the defendants had invited a close friend to share. The defendant Carol Mosher moved beyond the "family friend" sphere when she rented to Carolyn Luxe who was not so closely connected with the other young women or the Mosher family. Furthermore, there was testimony regarding a phone call between Carolyn Mosher and Lisa Gaylord at the emergency room of the hospital where Ms. Gaylord worked. The plaintiff testified that it dealt with additional rent requested by Mrs. Mosher for Kim's two week stay at the house. Given the nature of the hospital setting and the nature of the plaintiff's duties it was perhaps a non-fortuitous moment for this type of discussion and the plaintiff hung up on Mrs. Mosher. These facts further the view that Mrs. Mosher was engaging in the conduct of a trade or business.
A violation of CUTPA may be established by showing a practice amounting to a violation of a public policy. Web Press Services Corporation v. New London Motors Inc. 203 Conn. 342, 355. A breach of public policy, in turn, may result from a violation of another statute. Tillquist v. Ford Motor Co., 714 F. Sup. 607. Clearly the illegal entry and detainer constitutes a statutory violation in the instant case which brings it within the purview of a notion of unfairness, an action offensive to public policy. The court finds that the defendants violated CUTPA by their illegal lockout of the plaintiff, their conversion of her possessions and their larcenous actions.
The plaintiff seeks damages, double damages pursuant to General Statute 47a-46, punitive damages, attorney's fees and costs CT Page 7560 pursuant to section 42-110g; and triple damages pursuant to 52-564. The burden of proving damages is on the party claiming them. Gargano v. Heyman, 203 Conn. 616, 620; Conaway v. Prestia, Id. at 493-494. The plaintiff submitted documentary evidence as well as testimony in claiming damages for lost rent, lodging, clothing, furnishings, the lease expense of the BMW, lost wages for June 4, 1991, the date of the first hearing, and miscellaneous expenses. The court finds actual damages in the amount of $2634.86.
Section 47a-46 permits a plaintiff who prevails in a case under 47a-43 to recover double damages. In Freeman v. Alamo Management Co., et al., 24 Conn. App. 124, Heiman, J. stated that "before a trial court may double an award of damages pursuant to General Statutes section 47a-46, the underlying violation of 47a-43
(a)(3) must have been established by clear and convincing evidence." at 131.
This standard is required to prove willful, wrongful and unlawful acts. Id at 129. Judge Heiman traces the history of the entry and detainer action, citing its purpose to protect "peaceable possession. . . from disturbance" and the "peace of the neighborhood." Id. at 130. He finds that "(T)he violation of the entry and detainer statute constitutes a violation of the public policy of this state. Based on the origins of entry and detainer, it is clear that its violation involves willful, wrongful and unlawful acts" Id. at 130.
The plaintiff has shown by clear and convincing proof that the defendants acted willfully, wrongfully and illegally. The defendants testified they acted from fear because the plaintiff owned a gun. However, she had never threatened them and they had never had occasion to file a complaint with the police or seek a court order enjoining her from possessing the gun. Molly Mosher last spoke with the plaintiff about the gun in November 1990. The gun was given to the police officers on the night of May 8 before the lockout. The defendants statements were self-serving and strained credulity, especially in their testimony describing the packing of the plaintiff's things. The sole reason for their actions appeared to be the fact that Molly Mosher believed that the plaintiff should have come to her defense in the quarrel between Molly and Kim. Ms. Mosher testified that she was hysterical when she left for her mother's home after the altercation when Kim had grabbed her arm. The sequence of events was perhaps grounds for a cooling off of the young women's friendship; it was not grounds for an illegal lockout. The actions of the defendants showed a complete disregard of the plaintiff's rights.
As to the violation of CUTPA, section 42-110g(a) provides that "(A)ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited in Sections 42-110b
CT Page 7561 may bring an action to recover actual damages. . . . The Court may award punitive damages and provide such equitable relief as it deems necessary or proper." 42-110g(d) provides that "the court may award. . . costs and reasonable attorney's fees based on the work reasonably performed by an attorney and not on the amount of recovery." The purpose of awarding attorney's fees is to encourage private enforcement of the Act. Hinchcliffe v. American Motors Corp., 184 Conn. 607, 617-618. The legislature enacted CUTPA with the intention that it be "remedial and so construed." Section 42-110b(d).
The plaintiff's claim for attorney's fees reflects the fact that the plaintiff had two attorneys. The first attorney, William Haslun brought the original complaint dated May 28, 1991. At the time a show cause hearing was set for June 4, 1991. On June 4, the plaintiff appeared with counsel and a hearing was held in which Carolyn Luxe testified as to the events surrounding the lockout. The defendants did not appear although they had each had abode service at their respective residences on May 28. On June 5, Attorney Andrew Nemiroff delivered a letter to the court in which he stated that Mrs. Mosher was at her home in Virginia when the papers were served. Molly Mosher did not see the papers until May 29 and brought them to her mother on May 31. When Mrs. Mosher discovered the name of the plaintiff's attorney, she contacted her attorney in Washington, D.C. and instructed him to contact Attorney Haslun of Ivey, Barnum and O'Mara to inform him that his firm had performed a substantial amount of legal work for her. The firm withdrew its appearance and the plaintiff obtained the services of the present counsel of record, Harold Burke. He represented the plaintiff at the hearing of June 4. Subsequently the court granted the defendants' motion for a continuance filed by Attorney Maurice K. Segall of Cummings and Lockwood who remained as counsel for the defendants throughout the hearing. The defendants caused the delay and the necessity for a second hearing because they ignored the order to show cause until after the plaintiff had incurred legal fees for a hearing that the defendants did not attend. The plaintiff, an emergency room nurse who works 12 hour shifts, and who also works part-time in a doctor's office, missed at least one day of work as a result of the delay.
In conclusion and for the foregoing reasons, the court finds for the plaintiff on all counts and awards the following:
Double damages pursuant to General Statute 47a-46 in the amount of $5269.72;
Punitive damages pursuant to section 42-110g in the amount of $10,000;
Attorney's fees pursuant to 42-110g in the amount of $7172; CT Page 7562
Costs in the amount of $284.
Leheny, J.