[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
As requested, the court has taken judicial notice of the CT Page 7397 earlier summary process actions brought by the plaintiff against the defendants. Crediting some but not all of the testimony of the named defendant and drawing reasonable inferences therefrom, the court finds the following facts. On May 15, 1995, the plaintiff was the owner of a single family house. The plaintiff showed the house to the defendants James R. Kobernat and his wife Vicki S. Kobernat on that day. At that time, the house was occupied; the defendants and a representative of the plaintiff walked through the house. On May 15, 1995, the defendants and a representative of the plaintiff signed a lease for the house for the period commencing June 1, 1995 and ending May 31, 1996. The defendants paid the plaintiff some but not all of a security deposit which was to have been $1,700.00 and paid one month's rent of $1,200.00.
Between May 15, 1995 and the end of May 1995, the occupants of the house vacated and the house was damaged by a person or persons other than the plaintiff or the defendants. Prior to June 1, 1995, the defendant moved into the house. They did not have a key to the house; the house was open.[1] When the defendants moved into the house, the house did not have a certificate of compliance or an extension of time to obtain such a certificate as required by Article III § 3 of the Housing Code of the Town of Wallingford.[2] The defendants did not pay rent at any time after they moved into the house.
The defendant James Kobernat contacted the plaintiff concerning the damage to the house, although he did not "complain" about the damage. The defendants walked through the house with the plaintiff's representative. The plaintiff asked the defendants to move.
On July 13, 1995, the plaintiff served the defendants with a notice to quit. On July 26, 1995, the plaintiff brought a summary process action against the defendants based on nonpayment of rent. On September 14, 1995, the court (Jones, J.) dismissed that summary process action. On August 17, 1995, the instant action was commenced by the plaintiff, claiming money damages against the defendants. In its complaint, the plaintiff alleged that the defendants had denied access to the house for the purpose of making repairs, that the defendants had failed to provide insurance as required by the lease, and that the defendants had failed to make rental or use and occupancy payments. On September 19, 1995, the plaintiff commenced another summary process action against the defendants. On October 23, 1995, the plaintiff CT Page 7398 commenced a civil action against the defendants seeking possession of the house. On December 18, 1995, the complaint in this action was withdrawn, leaving the counterclaim extant.
Between about June and the end of September 1995, the plaintiff repaired some but not all of the damage to the house. Not until December 12, 1995 was a certificate of occupancy issued for the house.
The defendants' counterclaim is based solely on the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq; it is not, as they made clear at trial, a claim for vexatious suit.
"`It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.' (Citations omitted; internal quotation marks omitted.) CheshireMortgage Service, Inc. v. Montes, 223 Conn. 80, 105-106,612 A.2d 1130 (1992)." Fink v. Golenbock, 238 Conn. 183, 215,680 A.2d 1243 (1996).
The defendants' CUTPA counterclaim relies primarily on Conawayv. Prestia, 191 Conn. 484, 464 A.2d 847 (1983). In Conaway, "[i]n May, 1979, the defendants received written notice from the city of New Britain informing them of the requirement that certificates of occupancy be obtained prior to any units being rented. Although the defendants applied for certificates of occupancy on one of the buildings, their application was denied. A certificate has not been obtained for any of the units within the four buildings owned by the defendants." Id., 487. From May, 1979 through October, 1980, the defendants rented units to fifty-five tenants. CT Page 7399
"The trial court found that the apartments `were uninhabitable and constituted a serious threat to the health and welfare of the plaintiff occupants,' and that therefore the defendants had failed to discharge their responsibilities pursuant to § 47a-7." Conaway v. Prestia, supra,191 Conn. 488. Notably, in Conaway, the defendant landlords "continued collection of rents despite the uninhabitability of the apartments and without certificates of occupancy required by §§ 47a-5 and 47a-57 and as ordered by [city] officials. . . ."Ibid.
The Conaway court rejected the defendants' argument that the plaintiffs shared the obligation of obtaining certificates of occupancy. Moreover, the court stated: "In light of thesubordinate facts recited above . . . , we agree with the trial court's conclusion that CUTPA creates a private cause of action to recover damages based on violations of §§ 47a-57 and47a-5." (Emphasis added; footnote omitted.) Id., 491.
General Statutes § 47a-57 is not applicable to this case.[3] General Statutes § 47a-5 provides: "In any borough, city or town which requires a certificate of occupancy prior to human habitation of any building located therein, if any building is occupied in whole or in part without such occupancy permit, rent shall not be recoverable by the owner or lessor of the premises for such period of unlawful occupation." See also General Statutes § 47a-4a, 47a-7 (a).[4]
"`[L]egal principles ought not be applied in a mechanistic manner.'" Cummings v. Tripp, 204 Conn. 67, 81, 527 A.2d 230
(1987). The facts of Conaway are a far cry from those here. In this case, while the parties signed a lease for the term beginning June 1, the house was damaged by person or persons unknown prior thereto. The defendants went into possession without the keys and, therefore, the court infers, against the wishes of the plaintiff. Although the defendants did occupy the house and during that period of occupancy, the plaintiff attempted, by way of this civil action, to recover damages for, inter alia, the defendants' failure to pay rent,[5] probable cause for a CUTPA claim is lacking for two reasons. First, it would be a rare case where the bringing of a civil action would satisfy an element of CUTPA. Ordinarily, the bringing of such an action is not tortious unless it is brought without probable cause; Vandersluis v. Weil, 176 Conn. 353, 356, 407 A.2d 982
CT Page 7400 (1978); or brought primarily to accomplish a purpose for whichthe process was not designed. Mazzochi v. Beck, 204 Conn. 490,494, 529 A.2d 171 (1987), citing Restatement (Second) Torts § 682 and comment b thereto; cf. Mine Workers v. Pennington,381 U.S. 657 (1965); Eastern Railroad Presidents Conference v. NoerrMotor Freight, Inc., 365 U.S. 127, 136 (1961). The bringing of such an action does not generally become tortious simply because a good affirmative defense may exist. Secondly, the plaintiffs here, unlike in the defendants in Conaway, did not, in fact, collect any rent. See Conaway v. Prestia, supra,191 Conn. 493.[6]
The foregoing is dispositive of the first prong of the `cigarette rule." The defendants have not made out a case under the second or third prongs of the rule. See Williams Ford. Inc.v. Hartford Courant Co., 232 Conn. 559, 592-93, 657 A.2d 212
(1995) (negligence not an unfair trade practice within CUTPA).[7]
The court has not purported to rule on the propriety of the plaintiff's dealings with the defendants, including the propriety of the plaintiff's multiple actions against the defendants. But limited to the allegations of the CUTPA counterclaim, as circumscribed by the defendants' claim at trial, the court does not find probable cause to sustain the validity of the defendants' claim. For that reason, the application for prejudgment remedy is denied.
BY THE COURT
Bruce L. Levin Judge of the Superior Court