[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
This action is in three counts and arises out of a fire that caused the deaths of two minor children. The defendant was the landlord in the building which burned. The first count is brought by the plaintiff's decedent for the death of the children. The second count is a claim by the parents under the bystander emotional distress tort. The third count is a claim by the lessee mother under the Connecticut Unfair Trade Practices Act.
The motion to strike is aimed at paragraphs 6B of the first and second count in toto but seems to be particularly concerned with that portion of 6B in both counts that is based on an allegation of negligence to the effect that the defendant failed to warn his tenants of the fact that he had no certificate of occupancy for the apartments. CT Page 2114
The motion to strike is also aimed at the third count which is based on an alleged violation of our unfair trade practices act.
 (1)
In a previous decision by another judge, counts in a previous complaint were stricken which based a claim of negligence on the defendant's failure to secure a certificate of occupancy. The court reasoned and this court agrees that there was a lack of causative negligence between the failure to secure the certificate and the resulting harm.
The plaintiff then filed a revised complaint in which in subparagraph 6B of the first two counts it is alleged that there was a failure to warn the tenants that such a certificate of occupancy was not obtained; but paragraph 6B also contains other allegations of negligence. The defendant then filed a request to revise which in effect requested that this just mentioned failure to warn allegation be deleted or be separated out so that a motion to strike could be filed. In a second memorandum of decision the court then upheld the plaintiff's objection to the request to revise saying it was an "inappropriate procedural tool" apparently because the request to revise "may not ordinarily be used to substantively challenge a pleading", P LProperties v. Schnip Development Corp., 35 Conn. App. 46, 50
(1994). The court said that in its first decision "the court ruled simply because a person fails to obtain a certificate of occupancy does not mean that she is strictly liable or liable on a per se basis for injuries to someone occupying the premises. The court did not address whether a negligence theory based on a failure to warn the plaintiffs of the lack of occupancy certificate was a viable cause of action."
The defendant then filed a motion to strike paragraph 6B and now the plaintiff argues that the motion to strike is improper because "generally a motion to strike may not be utilized to attack only specific allegations in a cause of action." The court had never specifically addressed the defendant's request to separate out this failure to warn allegation. This would probably be inappropriate since it is now part of a general negligence cause of action which contain several allegations of negligence which constitute one cause of action.
Although the cases are replete with language to the effect CT Page 2115 that "ordinarily" or "generally" a motion to strike should not be used to attack a specific allegation in a count, this may be a case where the ordinary should be departed from. Existing along with rules of practice, which are not meant to be a straight jacket but are intended to do substantial justice and avoid wasting of judicial resources, are such concerns as the law of the case and consistency in legal rulings. A prior court has ruled, and this court agrees, that failure to secure a certificate of occupancy is not causative negligence. If failure to secure a certificate of occupancy is not causative negligence and cannot be plead as an allegation of negligence, how can failure to warn that such a certificate was not procured be causative negligence?
In other words, if the lack of a certificate of occupancy says absolutely nothing about whether in fact a building was properly maintained, how can failure to warn about such a status that, as indicated, says nothing — be a basis for a negligence allegation? In circumstances such as this a motion to strike should be permitted.
In any event this court, although it agrees with the earlier substantive ruling of the court, disagrees with the procedural position to the effect that a request to revise was inappropriate.
The common law motion to expunge is now our request to revise and although such a motion could not be used to test substantial rights it was said of a motion to expunge that "such a motion is proper to attack an amended complaint after a demurrer has been sustained where the allegations of such a complaint appear to be the same, in substance, as (those of) the one which was stricken", Good Humor Corp. v. Ricciuti, 160 Conn. 133, 137
(1970), see also Royce v. Westport, 183 Conn. 177, 180 181 (1981). By filing a new pleading after a motion to strike a party abandons any claim to a favorable judgment on the withdrawn complaint, Arnold v. Kutinsky, 80 Conn. 549, 552 (1908). How can the plaintiff now say that the prior ruling of the court is not necessarily the law of the case requiring the deletion of a substantially similar and analytically related claim in a subsequent pleading? The reference to failure to warn concerning the lack of a certificate of occupancy in the present complaint is substantially similar to the claim stricken from the previous complaint; that action by the court therefore renders the present allegations immaterial and improper, P.B. § 10-35(2). CT Page 2116
The court will strike that portion of paragraph 6B of counts one and two that alleges "that the third floor of said premises did not have a Certificate of Occupancy" (this allegation is prefaced by a general allegation that there was a failure to warn of this among other circumstances.
 (2)
The motion to strike the Connecticut Unfair Trade Practices count the defendant raises procedural and substantive arguments.
 (A)
Procedurally the defendant contends that under the joinder rules of P.B. § 10-21 the CUTPA count by the plaintiff Kathy St. Amand may not be joined with counts involving claims for injury sustained during a fire at Ms. St. Amand's home. Count one does not involve Ms. St. Amand, it is a wrongful death claim brought by the administrator of the estates of the two minors killed in the fire. Count two is a bystander emotional distress claim brought by Ms. St. Amand and the father of the child. Count three, the CUTPA claim, which involves rental payments between Ms. St. Amand and the defendant and alleges deceptive practices in collecting those payments.
Joinder of these counts in one action violates two provisions of the Practice Book according to the defendant. First, the defendant argues that P.B. § 10-21 is not satisfied. That section says that several causes of action can be united in the same complaint . . ." (7) upon claims, whether in contract or in tort or both, arising out of the same transactions connected with the same subject of action."
The defendant also notes that to be properly joined all plaintiffs must be common to all counts of the complaint, referring to Conn. Civil Procedure, Vol. 1, 2d, ed., Stephenson § 91 p. 363. But as Stephenson notes two plaintiffs can unite against a single defendant "when the two causes of action arise from the same transactions, in which case the rules permit two plaintiffs to sue on independent actions., id., see FairfieldLumber Supply Co. v. Herman, 139 Conn. 141, 143 (1952). Compare explicit provision of Practice Book at § 9-4: "All persons may be joined in one action as plaintiffs in whom any right of relief in respect to or arising out of the same transaction or CT Page 2117 series of transactions is alleged to exist either jointly or severally when, if such persons brought separate actions, any common question of law or fact would arise. . . ."
This language impliedly gives a very broad meaning to the word "transaction," and in fact the arguments raised by the defendant as to joinder depend on the definition of the word "transaction." Older cases give liberal readings to the concept of transaction. The Rules of Practice were designed to allow a plaintiff "to state his [or her] grievance to the court, untrammeled by artificial forms of pleading and regardless of most of the ancient distinctions of procedure as to law and equity, or contract and tort." Craft Refrigerating Machine Co. v.Quinnipiac Brewing Co., 63 Conn. 551, 560 (1883). The court went on to say that "a transaction is something which has taken place whereby a cause of action has arisen. It must therefor consist of an act or agreement, or several acts or agreements having some connection with each other in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered." Id., pp. 560-561, cf. DeFelippiv. DeFelippi, 23 Conn. Sup. 352 (1962).
"Transaction" then must be defined in terms of the operative facts that might prospectively give rise to a claim, whatever that claim may be. If the operative facts of the wrongful death claim and the CUTPA claim are examined in the revised complaint, they are practically verbatim reproductions of each other.
The defendant did not raise this argument but § 10-21
also requires that "the several causes of action . . . shall affect all the parties to the action." Moller Horton rightly call this "antediluvian" as Judge King noted in Burlington v.Hartford-Connecticut Trust Co., 12 Conn. Sup. 290 (1943). In any event, all the counts affect the defendant and if the claims arise out of the same transaction, as the court concludes they do, then the requirements of P.B. § 9-4 are met since parties can be joined as plaintiffs if their claim to relief arises out of the same transaction.
The defendant finally notes that if the matters are joined this will result in prejudice to the defendant, certain matters can be introduced under one or the other theory of the complaint that might not be able to come into evidence on another count. Under both P.B. § 9-4 and § 10-21 the trial judge can sever counts otherwise properly joined in one complaint for the CT Page 2118 purposes of trial or bifurcate any trial or take a variety of other steps to minimize any prejudice. The rules on joinder should not be ossified to prevent liberal joinder because of claims of possible prejudice which can be dealt with by techniques that have nothing to do with the propriety of joinder as such.
 (b)
The defendant raises several substantive objections to the CUTPA count.
It is first claimed that an isolated incident will not support a CUTPA claim — the plaintiffs have failed to allege wrongful acts with such frequency as to indicate a general business practice. In Connecticut Unfair Trade Practices Act,
Langner, Morgan, and Belt, Vol. 1 at page 45, it is stated that
 "[t]he issue [of isolated transactions] has been discussed in a number of trial court decisions and most have found that a single act is sufficient. Decisions holding a single act not sufficient to violate CUTPA frequently cite Mead v. Burns, a decision holding that proof of a general business practice is necessary to establish a violation of the Conn. Gen. Stat. §§ 38-60 and 38-61 (d) of the Connecticut Unfair Insurance Practices Act ("CUIPA"). This result is dependent on the specific language of § 38a-816 (6) of CUIPA and is not applicable to CUTPA claims generally."
See also Wallenta v. Moscowitz, 4 Conn. Ops. 900 (1998). As pointed out in McCarthy v. Fingelly, 4 Conn. L. Rptr. 177 (Katz, J., 1991), "the issue is not whether the litigant is required to allege more than a single transaction but whether CUTPA applies to a single private transaction by a person not employed in the business of making such transactions." The defendant has not specifically addressed that issue, which may be difficult to do sometimes in a motion to strike, and the court will not try to resolve it on the record before it.
The defendant also argues that the CUTPA claim fails to allege that the conduct complained of caused an unjustified injury that is substantial. The defendant argues that the CUTPA count seeks reimbursement of rent monies that were voluntarily paid by the plaintiff and collection of rents from tenants who CT Page 2119 are voluntarily paying rent is not a proper basis for a CUTPA action. The defendant cites Smith v. Dreamy Hollow, 150 Conn. 702
(1953); Conaway v. Prestia, 191 Conn. 484, 995, n. 13 (1983);Kohl v. Murphy, CV93-0352626 (NH Sup., 1995).
The defendant further maintains that, insofar as the plaintiff claims personal injury damages, a CUTPA claim cannot be made since CUTPA is concerned with unjustified consumer injury rather than personal injury based on negligence. A-G Foods, Inc.v. Pepperidge Farms, Inc., 216 Conn. 200, 217 (1990); Anzellottiv. National Amusements, CV95-0546129 (Htfd. Sup., 1996).
 i. Conaway v. Prestia, supra, does not support the defendant's position. Although Conaway at footnote 13 reiterates the court's holding in Smith v. Dreamy Hollow, supra, that §§ 47a-5 and 47a 57(c) do not permit recovery for voluntarily paid rents, the court at footnote 11 at 191 Conn. page 492 states that "Even if voluntarily paid (i.e, the rent), the fact that these statutes simply bar recovery, however, does not preclude the plaintiffs from maintaining an action pursuant to § 42-110 (b)." Merely because a statute does not provide for a civil remedy that does not preclude a court from determining that there should be a court created civil remedy in furtherance of the purposes of the legislation, cf. Restatement (Second) Torts § 874A. Given the broad ameliorative purposes of CUTPA, the court cannot determine by the vehicle of a motion to strike that the remedy sought here if not allowed under the previously mentioned statutes, should not be permitted under a broadly ameliorative statute like CUTPA. The so-called "cigarette rule" adopted by our state in Conaway
at 191 Conn., pp. 492-93 as its first criteria to determine whether there has been a CUTPA violation permits a consideration of whether a practice "without necessarily having been previously considered unlawful offends public policy as it has been established by statutes. . . ."
Neither does Kohl v. Murphy, supra, support the defendant's position; the case in fact suggests the contrary and seems to only reject the alleged violation of § 47a-5 as the basis for a CUTPA claim because: "The facts alleged . . . do not support a finding that the acts alleged to constitute a violation of §47a-5 occurred in the conduct of a trade or business." The latter argument is not made here and the court cannot address it on this record. CT Page 2120
The just concluded position by the court satisfies the "substantial injury" requirement of CUTPA since it recognizes that a claim of monetary harm can be made.
 ii.
The defendant also argues that damages grounded solely in negligence do not satisfy the ascertainable loss requirement of CUTPA.
The court is unclear as to the thrust of this proposition which is stated in one sentence of the brief. The courts are divided on whether a simple act of negligence can constitute a CUTPA violation — query whether a negligence per se violation based on failure to comply with safety statutes would make a difference to this analysis. It is also true that underJackson v. R.G. Whipple, Inc., 225 Conn. 705 (1993) as Langner, Morgan and Belt point out there may be significant limitations on the viability of CUTPA claims based on negligence. The court said that "it strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm caused by any person in the conduct of any `trade' or `commerce.' Id., pp. 725-726; see Langner, Morgan and Belt, supra, at § 4.5, pp. 130-134. The court will not decide this issue on the basis of this record especially since the negligence claim is based on a violation of state statutes imposed on landlords to ensure public safety where the claim is made that failure to abide by those statutes resulted in serious personal injuries and death such a claim may give "form" to an otherwise formless claim.
The court strike paragraphs 6(b) of counts one and two but does not strike the Third Count which advances a CUTPA claim.[1]
Corradino, J.