[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE #106
This is the defendant's motion to strike the third count of the plaintiff's complaint on the ground that it insufficiently alleges a cause of action under the Connecticut Unfair Trade Practices Act ("CUTPA").
On May 15, 1991, the plaintiffs, Walter and June Andrus, filed a four count complaint against the defendant Robert E. Maloney, an officer of the North American Bank and Trust Company, ("NAB"), alleging wrongful set off.
It should be noted that on May 23, 1991, the defendant filed a request to revise plaintiffs' complaint, including specific allegations made in count three. On June 10, 1991, the defendant filed objections to the request. On July 8, 1991, the court, Meadow, J., overruled the objections pertaining to count three. However, no revised complaint was filed by the plaintiff to date.
The defendant now moves to strike count three. Since now revised complaint has been filed, the motion to strike count three CT Page 10225 of the plaintiffs' complaint will be viewed as against the plaintiffs, unrevised amended complaint filed on May 15, 1991.
Count three therein alleges that the defendant committed a CUTPA violation by knowingly setting off debts owed by the plaintiffs, then attorneys to NAB with $146,000 of the plaintiffs' money. The plaintiffs allege that the $146,000 had been deposited by their former attorneys into a trust account at NAB for the purpose of purchasing land. The plaintiffs further allege that such wrongful set offs were "unfair or deceptive acts or practices. . .performed within trade or commerce. . .resulting in an `ascertainable loss. . .causing the plaintiffs to suffer] a substantial injury. . .emotional distress. . .and a financial loss."
The defendant lists four grounds in support of his motion to strike the third count from the plaintiffs' complaint: (1) the plaintiffs fail to allege a consumer, competitive or other business relationship between the plaintiffs and the defendants; (2) the `plaintiffs fail to properly allege that the defendant was engaged in a trade or business himself; (3) CUTPA does not apply to banks; (4) CUTPA does not apply to nonconsumer transactions. The defendant has filed a supporting memorandum of law, and the plaintiffs have filed a memorandum in opposition.
"The purpose of a motion to strike is to contest. . .the legal sufficiency of the allegations of any complaint. . .to state a claim upon which relief can be granted." Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 544 A.2d 1185 (1988). The motion to strike "admits all facts well pleaded. . .;" Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985) (emphasis in original); and those facts must be viewed in the light most favorable to the pleader; Amodio v. Cunningham, 182 Conn. 80, 82, 438 A.2d 6 (1980).
The court will take up first the third ground listed by the defendant in support of his motion to strike. The defendant claims that CUTPA does not apply to banks and therefore, can not apply to him as an officer/employee of a bank.
Whether or not CUTPA applies to banks has not yet been addressed by an appellate court. Gaynor v. Union Trust Co.,216 Conn. 458, 582 A.2d 190 (1990). Moreover, a split of authority exists it the superior court level as to whether CUTPA applies to banks.
The majority of the superior court cases have generally found that CUTPA may be applied to banks, when they are engaged in consumer-orientated activities. They set forth two reasons for this: 1) the legislature did not choose to include the Federal Trade Commission Act (FTCA) bank exemption in CUTPA, and 2) the Supreme Court has ruled that CUTPA should be broadly construed to CT Page 10226 achieve its public policy goals. Web Press Services Corporation v. New London Motors Inc., 203 Conn. 342, 354, 525 A.2d 57 (1987).
Some of the Superior Court cases which have so found include the following: Economic Development v. Cititrust, 3 CTLR 517
(April 15, 1991, Dranginis, J.); Westledge Real Estate, Inc. v. Suffield Bank, 3 CTLR 217 (February 11, 1991, Clark, J.); Bristol Savings Bank v. Szydlowski, 3 CTLR 146 (January 28, 1991, O'Connor, J.); Ebersol McCormick v. Torrington Savings Bank, 4 CSCR 499,500 (May 26, 1989, Pickett, J.); Andrews v. Connecticut Bank Trust Co., 1 CSCR 795 (September 22, 1986, T. Sullivan, J.).
The argument against CUTPA applying to banks is essentially that the FTCA, which is the basis for CUTPA, explicitly exempted banks from its application. Bristol Savings Bank v. Sattler,4 CSCR 351 (March 29, 1989, Aronson, J.); People's Bank vs. Horesco,1 CSCR 62 (January 22, 1986, Jacobson, J.), aff'd on other grounds,205 Conn. 319, 533 A.2d 850 (1987).
In the Horesco case, the trial court refused to overturn at prior ruling by this jurist (Maiocco, J.) granting a motion to strike on the grounds that CUTPA does not apply to banks. The Supreme Court did not address this issue but affirmed on other grounds. This court has maintained the same position, albeit an apparent minority one, in ruling on similar motions since the Horesco case. No new arguments have been advanced to prompt the court to change its position.
Accordingly, the motion to strike is granted on the ground that CUTPA does not apply to banks and therefore would not apply to an officer/employee of the bank.
Although this ruling is dispositive of this motion, the court is fully aware that the above issue may well be subject to appellate review. The court will therefore consider the remaining issues raised by the subject motion, in the event such review results in a reversal of the court's ruling.
The defendant first argues that in order to maintain CUTPA action, the plaintiffs must stand in a consumer or competitive relationship with the defendant. Defendant further argues that the lack of such a relationship brings the claim outside the scope of CUTPA, and cites two superior court decisions and one district court decision in support.
"Consumer" has been defined as "[a] member of that broad class of people who are affected by. . .trade practices for which state and federal consumer protection laws are enacted." Black's Law Dictionary, 5th ed., updated to 1979. CT Page 10227
"The purpose of [CUTPA] was to provide meaningful avenue of redress for consumers who had been victims of unfair or deceptive, trade practices. . . ." Gill v. Petrazzuoli Bros., Inc., 10 Conn. App. 22,33, 521 A.2d 21 (1987).
The plaintiffs have alleged that they have been adversely affected by an unfair trade practice, in that the defendant knowingly set off debts of a third party with funds held in trust for the plaintiffs.
Based on these allegations, the court could determine that the plaintiffs are consumers as defined, supra, that they have sufficiently alleged a consumer injury, and, therefore, are entitled to the protection of CUTPA.
Even in the absence of such a finding of a direct consumer relationship, a CUTPA claim may still be viable. The Connecticut supreme Court, in A. Secondino Son, Inc. v. LoRicco, 215 Conn. 336,343, 576 A.2d 464 (1990), has stated:
 A party seeking to recover damages under CUTPA must meet two threshold requirements. First, he must establish that the conduct at issue constitutes an unfair or deceptive trade practice. Web Press Services Corporation v. New London Motors Inc., 205 Conn. 479, 481-84, 533 A.2d 1211 (1987); Conaway v. Prestia, 191 Conn. 484, 492-93, 464 A.2d 847 (1983). Second, he must present evidence providing the court with a basis for a reasonable estimate of the damages suffered. Barco Auto Leasing Corporation v. House, 202 Conn. 106, 120-21, 520 A.2d 162 (1987); Conaway v. Prestia, supra, 494; Hinchliffe v. American Motors Corporation, 184 Conn. 607, 619, 440 A.2d 810
(1981).
There is no reference in Secondino, supra, to a requirement that there exist between the plaintiff and defendant any direct consumer relationship.
Moreover, 42-110g(a) of CUTPA provides:
 Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper.
CT Page 10228
Furthermore, in Waterbury Petroleum Products, Inc. v. Canaan Oil and Fuel Co., 193 Conn. 208, 477 A.2d 988 (1984), the court noted that, although CUTPA required privity between the plaintiff and the defendant as originally enacted, such a requirement was deleted by the 1979 amendment of the act.
Consequently, it would appear that no direct consumer relationship need exist between the plaintiffs and the defendant as a prerequisite to a CUTPA claim.
The defendant next claims that the plaintiff fails to allege that the defendant committed an unfair act or practice in the course of a trade or business of his own.
The defendant concedes that officers of a corporation can be personally liable for tortious acts committed by them on behalf of the corporation. He asserts, however, that CUTPA is a separate and distinct cause of action; that the defendant must commit a CUTPA violation in the course of a trade or business; that the trade or business being conducted was that of NAB's, and not the defendant's; that the defendant was merely an agent of the bank in his capacity as officer, and therefore not personally liable for a CUTPA violation.
No Connecticut case law specifically deals with whether an officer of a corporation may be liable for a CUTPA violation.
Inasmuch as CUTPA is derived from the Federal Trade Commission Act ("FTCA"), 45 U.S.C. § 15(a)(1), a review of federal case law is proper. General Statutes 42-110b(b).
Two representative cases are United States v. Bestline Products Corporation, 412 F. Sup. 754, (N.D. California 1976), and Doyle v. FTC, 356 F.2d 381 (5th Cir. 1966), where the federal `courts dealt with the affect of "cease and desist" orders of the Federal Trade Commission ("FTC"), on officers and employees of corporations which were found to have violated the FTCA.
In Bestline, the defendant corporate officer, president of the company, claimed that he could not be held personally liable for' alleged violations of the "cease and desist" orders, since he did not exercise "autocratic control" over the corporation. The district court held that an officer who acts on behalf of his corporation may be held liable for any alleged noncompliance with orders to cease and desist unfair or deceptive trade practices issued by the Commissioner, where that officer was officially responsible for the conduct of the corporation's affairs, all personally directed the corporate activities and formulated its policies, or directly participated in the unlawful activity. CT Page 10229
Consequently, such potential liability for noncompliance with orders from the Commissioner of the FTC may be viewed as being analogous to a violation of CUTPA, where a private cause of action exists
In Doyle, on the other hand, the fifth circuit court of appeals held that while corporate officers who are responsible for the conduct of a corporation's affairs may be personally liable if they prevent a corporation from complying with the cease and desist orders, an employee who is merely carrying out the business of his employer could not be held personally liable.
General Statutes 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." (emphasis added). "Person" is defined, in part, as "a natural person. . . ." Section 41-110a(3). "Conduct" is not defined in the statute. Nevertheless, words of a statute are to be given their commonly approved meaning unless contrary intent is clearly expressed. FAA v. Administrator, Unemployment Compensation Act,197 Conn. 546, 494 A.2d 564 (1985). "Conduct" is defined as "the act, manner or process of carrying out (as a task) or carrying forward (as a business); Webster's New Third International Dictionary (1971).
Moreover, CUTPA is a remedial statute and should therefore be liberally construed. Web Press Services Corporation v. New London Motors, Inc., 203 Conn. 342, 354, 525 A.2d (1987).
Based on the allegations as set forth in this third count, admitting all facts as true and viewing them in the light most favorable to the plaintiff, a CUTPA action could be maintained against the defendant, who is alleged to have knowingly and, intentionally participated in an unfair or deceptive trade or practice in the course of conducting NAB's business.
The defendant's final claim is that CUTPA only applies to consumer transactions. The defendant maintains that there is nothing in the plaintiffs' complaint alleging that any consumer transaction took place. He argues that the only transactions that transpired were commercial in nature, and that the plaintiffs' harm was commercial, as well.
"CUTPA is not limited to claims involving consumer injury." McLaughlin Ford v. Ford Motor Co., 192 Conn. 558, 566,473 A.2d 1185 (1984). "[A] competitor or other business person can maintain a CUTPA cause of action without showing consumer injury." Id., 567. CT Page 10230
Furthermore, as previously discussed, supra, the court may find that the plaintiffs are consumers, and have in fact sufficiently alleged a consumer injury.
Finally, even if the court finds that the injury allegedly sustained by the plaintiffs is a commercial one, it could still determine that the plaintiffs are "other business people", and therefore, qualify as plaintiffs in a CUTPA action.
The court finds that in all respects other than the issue of whether CUTPA applies to banks, the defendant's motion to strike would be denied.
Having found however, for the reasons recited above, that CUTPA does not apply to banks and therefore does not apply to an officer employee of the bank, the motion to strike is granted.
MAIOCCO, J.