[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has filed a nine-count complaint against the defendants Davenport Group, Madison Group and six individuals who are collectively referred to as Control Group. The defendants move to strike certain counts and several prayers for relief.
The allegations of the complaint which must be taken as true, Blancato v. Feldspar Corp., 203 Conn. 34, 36 reveal the following. Davenport entered into a written agreement with the plaintiff under which the plaintiff was retained as "exclusive advisor" to use its best efforts to effect placement in Connecticut for structuring, financing and sale of up to $100 million dollars of limited partnership interests in the Madison Group, a private investment fund. Pursuant to the terms of the agreement Davenport agreed to cause the Madison Group to pay the plaintiff certain fees from proceeds raised from the closing of these placements, which fees varied in amount depending upon whether the investor contact was made initially by the plaintiff or Davenport. In addition, the agreement allowed the plaintiff to apply a portion of its fees toward the purchase of its own limited partnership interest in the fund.
The complaint further alleges that the plaintiff contacted numerous potential investors and has otherwise acted in conformity with its obligations under the agreement. It then alleges that at least six investors have made actual investments in the fund in the CT Page 3953 amount of $53 million dollars and that several others were scheduled to make investments subsequently, with total investments amounting upward to $85 million dollars.
The plaintiff concludes that the defendants fraudulently induced the plaintiff to provide these services when they had no intention of paying for them and characterizes such conduct as an unfair trade practice under the Connecticut Unfair Trade Practices Act, General Statutes 42-110a et seq. ("CUTPA").
The Motion to Strike seeks to defeat Counts Three and Nine which allege CUTPA violations, Count Eight which alleges tortious interference and the prayers for relief which seek interest, attorney's fees, punitive damages, double/treble damages and specific performance.
I. THE CUTPA COUNTS (3 AND 9)
The defendants argue that Counts 3 and 9 are legally insufficient because (a) the plaintiff has failed to allege that the defendants' actions were performed "in the conduct of any trade or business" as defined in 42-110a(4) of the General Statutes and (b) that because the plaintiff was selling services and the defendants were purchasing those services the conduct complained of is not trade or commerce under the Act. Thus, the defendants contend that the phrase "in the conduct of trade or commerce" focuses exclusively on the supply side of the commercial relationship and therefore CUTPA may only be invoked against the supplier of goods and services. The defendants conclude with the argument that it is against public policy to stretch CUTPA to permit the vendor of services to use the Act as a weapon against consumers of services, customers or clients.
On the other hand, the plaintiff argues that providers of services can validly claim CUTPA violations against a recipient of services. The plaintiff reasons that the conduct alleged in the complaint occurred in the course of each party's business, and as such falls within the statutory definition of trade or commerce because it involves the "distribution of services". The plaintiff further claims that the parties involved are sophisticated business entities not consumers and that CUTPA specifically regulates relations between competitors and businessmen.
Section 42-110b(a) of the General Statutes provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce". The words "trade" and "commerce" are defined as:
 the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the CT Page 3954 distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article commodity or thing of value in the state. 42-110a(4).
The court's analysis must begin with a consideration of the nature and purpose of the Act. The legislature has itself stated that the Act must be construed as remedial, General Statutes,42-110b(d). Consequently, the statute must be construed liberally in an effort to effectuate its public policy goals, Web Press Services Corp. v. New London Motors Inc., 203 Conn. 342, 354 (1987). Additionally, the Act proscribes a broader range of conduct than did the common law and provides a more flexible and complete remedy, Hinchliffe v. American Motors Corporation, 184 Conn. 607,617 (1984). "CUTPA seeks to create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts". Id. at 618. As the Supreme court said in Sportsmen's Boating Corporation v. Hensley, 192 Conn. 747, 755
(1984)", the Connecticut General Assembly deliberately chose not to define the scope of unfair or deceptive acts prescribed by CUTPA so that the courts might develop a body of law responsive to the marketplace practices that actually generate such complaints".
While it is true that both the legislature and the courts have heralded CUTPA as "putting Connecticut in the forefront of state consumer protection", Heslin v. Connecticut Law Clinic of Trantolo and Trantolo, 190 Conn. 510, the entire body of law has remained general and non-specific in scope and coverage. Even the Act itself is broadly entitled "An Act concerning Unfair Trade Practices", P. A. 73-615, and is not limited by its terms to any specific class of persons. Indeed, 42-110g(a) authorizes suit by "any person", which term is given an all inclusive definition in 42-110a(3). Thus the expansive language of the Act is consistent with its desired liberal construction.
A. The Conduct of Trade or Commerce
Whether the defendant was engaged in the conduct of any trade or commerce turns on whether these defendants were engaged in the sale of property or the distribution of services, property or thing of value within the meaning of 42-110a(4). The complaint clearly alleges that the defendants were in the business of selling limited partnership interests to third parties. 34-9 (11) of the Connecticut Uniform Limited Partnership Act defines "partnership interest" as a partner's share of the profit and losses of the limited partnership and the right to receive distribution of partnership assets". Unmistakably, the defendants were engaged in the distribution and sale of property or a thing of value.
The defendants seek to limit application of this section to CT Page 3955 one who himself is a purchaser and therefore a consumer. CUTPA allows for no such limitation. In fact, it has been held not to be limited to conduct involving consumer injury, McLaughlin-Ford Inc. v. Ford Motor Co. Inc., 192 Conn. 558, 565.
As to those who made investments in the fund, the business-association between the plaintiff and the defendants was predominantly that of a finder or sales agent viz: a principal-agent relationship. As for its own limited partnership interest it was obviously a contract purchaser and the fact that the consideration for the purchase was to be derived from fees earned as a result of finding investors for the defendants does not alter the plaintiff's status as a purchaser.
Whether the plaintiff's status as the agent of the defendants entitled it to CUTPA protection depends upon (a) whether the plaintiff must have been itself a consumer of the defendant's property, or (b) whether the defendant was engaged in the distribution of services to the plaintiff.
A The Plaintiff as a Consumer
This issue has produced a division of opinion on this court, there been no Appellate or Supreme Court decisions directly in point. My view of this issue corresponds with the position expressed in Coldwell Banker Commercial Real Estate Services v. Calabrese Development Corporation, 5 Conn. L. Rptr. 18 art 498 (Feb. 17, 1992, Langenbach, J.); Cambridge Consulting v. Cadema Corporation, 15 CLT 9 at 197 (March 4, 1991, Katz, J.); Andrus v. Maloney, 7 CSCR 74 (Jan. 12, 1992, Maiocco, J.); Contra: Jackson v. Whipple, 5 Conn. L. Rptr. at 115 (Nov. 4, 1991, Leuba, J.); The Connecticut National Bank v. DiCocco, 16 C. L. T. 37 at 692 (Sept. 17, 1990, Murray, J.). For the reasons discussed above this court holds that one need not be a consumer in order to avail oneself of the remedies afforded by CUTPA. But even if the statute were construed to be so limited the court could determine at trial that the plaintiff is a consumer within the broad definition referred to in Andrus v. Maloney, supra at 75. I would add yet another reason. The term "consumer" is defined in virtually identical terms in several places in the General Statutes, i.e. one who enters business relationships primarily for personal, family or household purposes. See, 42-150aa, 42-151, 42-125aa(1), 42-110r(c). These definitions appear in Title 42 which bears the comprehensive title "Business, Selling, Trading and Collection Practices". But neither the term nor the definition appear in Chapter 735a, "Unfair Trade Practices". Thus the legislature must be presumed to have intended that "persons" protected by CUTPA not be limited to consumers. The fact that CUTPA claims generally occur in the context of consumer protection is an inevitable fact of life but it is not exclusive. In contrast, the Illinois Unfair Trade Practices Act expressly CT Page 3956 defines "consumer" as one who "purchases or contracts for the purchase of merchandise" and thus has been limited in its application to consumers, Steinberg v. Chicago Medical School, 371 N.E.2d 6334 (1977).
There is yet another reason to support this view. The restrictive application urged by the defendants would have disastrous practical consequences. For instance, it would prevent a merchandise seller who has been cheated through the deceptive acts of a purchaser from utilizing the full arsenal of remedies afforded by CUTPA. Such a result would be inconsistent with the remedial purpose of the statute.
B. Distribution of Services or Property by the Defendants
While the plaintiff does not explicitly allege that the defendants were engaged in trade or commerce, it does allege that it undertook "to effect placement of limited partnership interests" for the defendant. To this extent, the plaintiff alleges that the defendants were engaged in the distribution of property through the plaintiff and that the plaintiff was engaged in the distribution of services for the defendants. There is nothing in the Act which mandates that the violator himself be the distributor of the property or services. Rather it contemplates that any person may become implicated if in the process of engaging and retaining the services to be distributed he commits an unfair or deceptive act to the person whom he has enlisted to distribute the property or services. None of the decisions cited by the defendants militate against this conclusion.
The Motion to Strike is denied as to these counts.
II. TORTIOUS INTERFERENCE (COUNT EIGHT)
The plaintiff has asserted a claim for tortious interference against the individual defendants (Control Group) who are alleged to be principals of the contracting party (Davenport). The defendants contend that the plaintiff has not alleged sufficient facts to support the claim that the members of the Control Group were acting contrary to the best interest of Davenport and therefore plaintiff's claim is legally insufficient. The plaintiff responds that the Control Group is not a party to the agreement between the plaintiff and Davenport; rather "these individuals have created layers of entities through which they personally control the activities of the Madison Group".
Connecticut has long recognized that a cause of action exists for tortious interference with contract rights or other business relationships, Robert S. Weiss and Associates. Inc. v. Wiederlight,208 Conn. 525, 535 (1988). "For a plaintiff successfully to CT Page 3957 prosecute such an action it must prove that the defendants' conduct was in fact tortious. This element must be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendants acted maliciously". Id. at 536.
A different rule however applies where tortious interference is alleged against someone who is directly or indirectly a party to the contract. See, Multi-State Contractors. Inc. v. Vernon,193 Conn. 446, 451. "Officers, directors, agents or employees who have an interest in the activities of the corporation or the duty to advise or direct such activities should be immune from liability. Any other position would make the limited liability of the corporation somewhat meaningless", Seymour v. The Sero Company,4 CSCR 615 (July 11, 1989, Flanagan, J.).
In this count, the plaintiff alleges that the six persons who comprise the Control Group control the affairs of all Davenport defendants who control the Madison Group. These allegations imply at the very least that the Control Group has an identity of interest with Davenport and that it is an indirect party to the agreement. In the absence of any allegation that the Control Group acted out of self interest or was motivated by private benefit, the Motion to Strike must be granted.
III. THE CLAIM FOR INTEREST (PRAYER FOR RELIEF NUMBER 2)
The defendants argue that because the plaintiff has not alleged that its contract with the Davenport Group called for the payment of interest in the event of a breach, and the plaintiff has not alleged that the detention of money was wrongful under the circumstances, interest is not a proper element of damages. The plaintiff argues that it has alleged that the defendants have wrongfully withheld money and therefore interest is a proper element of damages. The question to be asked in awarding interest is whether the detention of money is or is not wrongful under the circumstances and whether the interests of justice require the allowance of interest as damages for the loss of use of money. Simonetti v. Lovermi, 15 Conn. App. 722, 727.
The plaintiff alleges in Counts Four, Five, Six and Seven that the defendants failed to pay it for services performed in accordance with the agreement. Thus the plaintiff has by necessary implication alleged that the defendants are wrongfully withholding money to which the plaintiff is entitled. Accordingly the Motion to Strike the second prayer for relief is denied.
IV. CLAIM FOR ATTORNEYS FEES AND PUNITIVE DAMAGES (PRAYERS FOR RELIEF NUMBER 3 AND 5). CT Page 3958
The Motion to Strike Prayers for Relief Numbers 3 and 5 are denied in view of the court's denial of the Motion to Strike the CUTPA claim. Clearly 42-110g expressly authorizes both reasonable attorney's fees and punitive damages.
V. THE CLAIM FOR DOUBLE AND TREBLE DAMAGES.
In Connecticut, double and treble damages can only be awarded if authorized by statute, DeMilo v. West Haven, 189 Conn. 671, 675. Since the complaint states no statutory basis for prayer for relief number 6 it must be struck unless authorized by CUTPA. 42-110g(a) permits the recovery of actual damages for ascertainable loss as well as punitive damages, Hinchliffe v. American Motors Corporation, supra at 612. It does not allow for double/treble damages as such. The Motion to Strike this prayer for relief is granted.
VI. SPECIFIC PERFORMANCE (PRAYER FOR RELIEF NUMBER 7)
In order to qualify for a decree of specific performance a plaintiff must allege in his complaint and prove that he was ready, willing and able at all times to purchase the property in question, Frumento v. Mezzanotte, 192 Conn. 606, 616. The complaint is devoid of any such allegation whether with or without the fees the plaintiff intended to use as partial payment for the limited partnership instead. The Motion to Strike this Claim for Relief is granted.
MOTTOLESE, JUDGE